Peter Goldstein [SBN 6992]
PETER GOLDSTEIN LAW CORP
peter@petergoldsteinlaw.com
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:    (702) 474-6400
Facsimile:    (888) 400-8799

Malcolm P. LaVergne [SBN 10121]
mlavergne@lavergnelaw.com
400 South 4th Street, Suite 500
Las Vegas, Nevada 89101
Telephone:    (702)448-7981
Facsimile:    (702)966-3117

*Attorney for Plaintiff*
*KEYHERRA GREEN*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KEYHERRA GREEN, | Case No.  2:20-cv-00769-KJD-DJA |
| Plaintiff, | **STIPULATION AND ORDER FOR PLAINTIFF TO FILE SECOND AMENDED COMPLAINT AND TO AMEND THE CAPTION TO INCLUDE DEFENDANTS MENENLYN ELIZAN; RAY MONTENEGRO; GWENDOLYN MYERS** |
| vs. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada and the County of Clark and operating CLARK COUNTY DETENTION CENTER (CCDC); NAPHCARE, INC., a foreign corporation doing business in the State of Nevada and is the Medical Care Provider for Clark County Detention Center; FRED MERRICK; LORA CODY; and DOES 1-10, inclusive, | |
| Defendants. | |

1

Plaintiff, KEYHERRA GREEN and Defendants LAS VEGAS METROPOLITAN POLICE DEPARTMENT, FRED MERRICK, LORA CODY and NAPHCARE, INC. (collectively hereinafter the "PARTIES"), by and through their counsel of record, hereby stipulate and agree to the following:

1.    Plaintiff KEYHERRA GREEN may file a Second Amended Complaint by December 23, 2020.

2.    To amend the caption to include Defendants MENENLYN ELIZAN, RAY MONTENEGRO and GWENDOLYN MYERS.

DATED:  December 22, 2020          PETER GOLDSTEIN LAW CORP


By:  /s/ Peter Goldstein
     PETER GOLDSTEIN
Attorneys for Plaintiff
*KEYHERRA GREEN*

DATED:  December 22, 2020          KAEMPFER CROWELL


By:  /s/ Lyssa S. Anderson
     LYSSA S. ANDERSON
     RYAN W. DANIELS
Attorneys for Defendants
*LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, FRED MERRICK; AND LORA CODY*

DATED:  December 22, 2020          LEWIS BRISBOIS BISGAARD & SMITH


By:  /s/ Katherine J. Gordon
     S. BRENT VOGEL
     KATHERINE J. GORDON
Attorneys for Defendant
*NAPHCARE, INC.*

## ORDER

IT IS SO ORDERED.  Plaintiff shall file and serve the amended complaint in accordance with LR 15-1.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave of Court to File Second Amended Complaint (ECF NO. 34) is hereby denied as moot.

DATED this 8th day of January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

**CERTIFICATE OF SERVICE**

I am employed in the County of Clark, State of Nevada. I am over the age of eighteen years and not a party to the within action; my business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

I hereby certify that on this 22nd day of December, 2020, a true and correct copy of the following document **STIPULATION AND ORDER FOR PLAINTIFF TO FILE SECOND AMENDED COMPLAINT AND TO AMEND THE CAPTION TO INCLUDE DEFENDANTS MENENLYN ELIZAN; RAY MONTENEGRO; GWENDOLYN MYERS** was served by electronically filing with the Court's CM/ECF electronic filing system to the following parties:

Lyssa S. Anderson, Esq.
Ryan W. Daniels, Esq.
KAEMPFER CROWELL
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135
Telephone:     (702) 792-7000
Facsimile:     (702) 796-7181
Email: landerson@kcnvlaw.com
          rdaniels@kcnvlaw.com
          wapplegate@kcnvlaw.com
*Attorneys for Defendants*
*Las Vegas Metropolitan Police Department,*
*Fred Merrick and Lora Cody*

Katherine Gordon, Esq.
LEWIS BRISBOIS
6385 South Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Telephone:     (702) 693-4336
Facsimile:     (702) 366-9563
Email: Katherine.gordon@lewisbrisbois.com
          Johana.Whitbeck@lewisbrisbois.com
*Attorneys for Defendant*
*Naphcare, Inc.*

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

By: _____
An Employee of Peter Goldstein Law Corp

3

Peter Goldstein [SBN 6992]
PETER GOLDSTEIN LAW CORP
peter@petergoldsteinlaw.com
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:     (702) 474-6400
Facsimile:     (888) 400-8799

Malcolm P. LaVergne [SBN 10121]
mlavergne@lavergnelaw.com
400 South 4th Street, Suite 500
Las Vegas, Nevada 89101
Telephone:     (702)448-7981
Facsimile:     (702)966-3117
*Attorneys for Plaintiff*
*KEYHERRA GREEN*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KEYHERRA GREEN,<br><br>Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada and the County of Clark and operating CLARK COUNTY DETENTION CENTER (CCDC); NAPHCARE, INC., a foreign corporation, doing business in State of Nevada and is the Medical Care Provider for the Clark County Detention Center; FRED MERRICK; LORA CODY; MENENLYN ELIZAN; RAY MONTENEGRO; GWENDOLYN MYERS; and DOES 4-10, inclusive,<br><br>Defendants. | Case No.  2:20-cv-00769-GMN-DJA<br><br>***PROPOSED SECOND AMENDED COMPLAINT FOR DAMAGES***<br><br>1. Violation of Fourth Amendment Unlawful Arrest and Warrant/Defective Particularity (42 U.S.C §1983)<br>2. Violation of Fourteenth Amendment Wrongful Incarceration (42 U.S.C. § 1983)<br>3. Unreasonable Search and Seizure—Seizure, Detention and Search (42 U.S.C. § 1983)<br>4. Substantive Due Process—Fourteenth Amendment (42 U.S.C. § 1983)<br>5. Denial of Medical Care- Fourteenth Amendment (42 U.S.C. § 1983)<br>6. Municipal Liability for Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>7. Disability Discrimination – Americans with Disability Act and Rehabilitation Act.<br>8. False Arrest/False Imprisonment (Nevada state law)<br>9. Negligence (Nevada state law)<br>10. Malicious Prosecution<br><br>**DEMAND FOR JURY TRIAL** |

---

1

**AMENDED COMPLAINT**

**INTRODUCTION**

1.    Plaintiff KEYHERRA GREEN, an African-American female with disabilities, was wrongfully arrested, extradited and jailed for seventy-two (72) days – a period of over two (2) months - without justification or probable cause.   This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights of Plaintiff under the United States Constitution and state law in connection with the investigation, affidavit in support of arrest, Plaintiff's subsequent wrongful arrest, extradition and incarceration by officers of the Las Vegas Metropolitan Police Department (LVMPD) for the crime of felony murder of an elderly person due to the actions of MERRICK, CODY and Does 4-5. Her arrest and incarceration could have easily been prevented.  At the time of Plaintiff's arrest, LVMPD had the identity of the true suspect captured on body camera recordings together with the true suspect's name, date of birth, identification information and photograph.  Notwithstanding that knowledge, LVMPD, MERRICK, CODY and DOES 4-5 caused to be issued an arrest warrant based on a deficient and false affidavit of probable cause.  Plaintiff repeatedly told the arresting officers they arrested the wrong person.  Plaintiff told arresting officers, LVMPD and NAPHCARE health care providers at Clark County Detention Center (CCDC) that she had certain disabilities requiring medication.  At CCDC, Plaintiff did not receive any medical assistance, despite her repeated requests through the grievance process.  Plaintiff adds the following individual defendants employed by NAPHCARE: MENENLYN ELIZAN R.N., RAY MONTENEGRO N.P, and GWENDOLYN MYERS EMT in the place of DOES 1-3.

2.    Other than shared race and gender with the true suspect, Plaintiff had a different first and middle name, birth date and physical appearance than the true suspect, who later confessed to the crime.  Defendants did not have probable cause to arrest Plaintiff and instead did so with a defective warrant of arrest.  During her incarceration, Plaintiff did not have all her medications she required making her ordeal all the more harrowing and causing her extreme emotional distress. Defendants MERRICK and CODY failed, refused, neglected, and acted with deliberate indifference to the rights of Plaintiff, in the following respects:  (a) they failed to do an even do a basic review and cross-check of information obtained from patrol officer Daniel Stopka, and (b) they ignored

**AMENDED COMPLAINT**

critical information that would have prevented Plaintiff's arrest and 72-day ordeal in jail.   This conduct shows reckless disregard and deliberate indifference to the rights of Plaintiff and Plaintiff would not have suffered arrest and incarceration as long as she did, but for the conduct of Defendants.

**PARTIES**

3.     At all relevant times, Plaintiff KEYHERRA GREEN, an African-American female, was an individual residing in the County of Los Angeles, California and the County of Clark, Nevada.

4.     Plaintiff suffers from mental impairments making her a protected individual under the Rehabilitation Act and the Americans with Disabilities Act (ADA). She requires medications for maintenance of these disabilities.

5.     Plaintiff's Medical history includes diagnosis for bipolar disorder, depression and anxiety.

6.     At all times relevant herein, Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT (hereinafter "LVMPD") was, at all times mentioned, is a political entity and political subdivision of Clark County and the State of Nevada, formed and operated pursuant to the Nevada Revised Statutes and, at all times relevant hereto, is the Police Department with jurisdiction throughout Clark County and also operates the Clark County Detention Center (CCDC).  LVMPD is a law enforcement agency entrusted to provide thorough and accurate investigation, reporting, and police protection throughout the City of Las Vegas, Nevada and unincorporated Clark County, Nevada.  LVMPD, as operator of CCDC, has constitutional obligations to provide medical care for pretrial detainee's safety, serious medical needs and not to falsely arrest, prosecute, and imprison individuals, each of which duties LVMPD breached with regard to Plaintiff.  LVMPD practices constitute *de facto* policies of falsely arresting, prosecuting, and imprisoning individuals; and, displaying deliberate indifference to the safety and serious medical needs of pretrial detainees' serious medical conditions.   At all times relevant herein, LVMPD employed some or all co-Defendant POLICE OFFICER DOES 4-5, and DOES 6-10, inclusive.

**AMENDED COMPLAINT**

7. Defendant NAPHCARE, INC. ("NAPHCARE"), was and is a foreign corporation qualified and registered to do business and doing business in the State of Nevada and at all times operated as medical health care provider at CCDC. NAPHCARE employed individuals who were named as DOES herein, all of whom were all deliberately indifferent to Plaintiff's serious medical needs, their names are: MENENLYN ELIZAN R.N., RAY MONTENEGRO N.P, GWENDOLYN MYERS EMT.

8. Plaintiff exhausted her administrative remedies by filing multiple grievances ("kites") requesting her medication but were ignored by both LVMPD officers and ELIZAN, MONTENGRO, MYERS and DOE NAPHCARE Defendants.

9. Defendant FRED MERRICK ("MERRICK), at all relevant times, was a Caucasian male police officer employed by the LVMPD.

10. Defendant LORA CODY ("CODY"), at all relevant times, was a Caucasian female police officer employed by the LVMPD, sued in her individual capacity.

11. Defendant MENENLYN ELIZAN ("ELIZAN"), at all relevant times, was an individual employed by Naphcare to work as a Registered Nurse with the Inmates at the Clark County Detention Center.

12. Defendant RAY MONTENEGRO ("MONTENEGRO"), at all relevant times, was an individual employed by Naphcare to work as a Nurse Practitioner with the inmates at the Clark County Detention Center sued in his individual capacity.

13. Defendant GWENDOLYN MYERS ("MYERS"), at all relevant times, was an individual employed by Naphcare to work as an Emergency Medical Technician with the inmates at the Clark County Detention Center sued in her individual capacity.

14. At all relevant times, LVMPD was the employer of Defendants MERRICK, CODY and DOES 4 through 5 who were LVMPD Police Detectives and/or NALPHCARE workers at CCDC (DOES 4 through 5) and DOES 6 through 10 ("DOE SUPERVISORS") who were managerial, supervisorial, and policymaking employees of the LVMPD.

15. MERRICK, CODY and DOE OFFICERS are sued in their individual capacities for damages only.

**AMENDED COMPLAINT**

16.     At all relevant times, Defendants MERRICK, CODY and DOES 1-10 were duly authorized employees and agents of LVMPD, who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant LVMPD.

17.     At all relevant times, Defendants MERRICK, CODY and DOES 1-10 were duly appointed officers and/or employees or agents of LVMPD, subject to oversight and supervision by LVMPD's elected and non-elected officials.

18.     In doing the acts and failing and omitting to act as hereinafter described, Defendants MERRICK, CODY, ELIZAN, MYERS, MONTENEGRO and DOES 4-10 were acting on the implied and actual permission and/or direction of LVMPD.

19.     At all times mentioned herein, each and every LVMPD Defendant(s) was/were the agents of each and every other LVMPD defendant(s) and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every LVMPD Defendant(s).

20.     The true names of defendants DOES 4 through 10, inclusive, are unknown to Plaintiff, who therefore sue these defendants by such fictitious names.  Plaintiff will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained.  Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein.

## JURISDICTION AND VENUE

21.     This civil action is brought for the redress of alleged deprivations of Plaintiff's constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et. seq.* and the Fourth and Fourteenth Amendments of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and §1367.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear and decide claims arising under state law.

AMENDED COMPLAINT

22.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in, the County of Clark, Nevada.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

23.     On August 21, 2018, LVMPD homicide Lt. Ray Spencer confirmed to the public in the Las Vegas Review Journal that Plaintiff was arrested for murder, "a crime she didn't commit." (Las Vegas Review Journal article dated August 22, 2018). On September 27, 2018, Defendants CODY and MERRICK testified to the grand jury that the true murderer was Keara Jean Green and testified, under oath, that Plaintiff had been arrested for a crime she did not commit.

24.     By the time of her release, Plaintiff had been wrongfully incarcerated on charges of felony murder for two (2) months and eleven (11) days.

## FACTS LEADING UP TO PLAINTIFF'S ARREST AND INCARCERATION

25.     On January 22, 2018, the daughter of Ghasem Aliaskari filed a missing person report for him and requested that the LVMPD conduct a welfare check on her father at 3001 Cabana Drive #47, Las Vegas, Nevada 89122 (his former residence).

26.     On January 23, 2018, the LVPMD patrol officer, Daniel D. Stopka, conducted a welfare check at 3001 Cabana Drive #47, Las Vegas, Nevada 89122, Mr. Aliaskar's home.

27.     During the welfare check, the responding LVMPD officer Stopka, employed by Defendant LVMPD, but not a Defendant in this case, had a body camera. In addition, Officer Stopka made notes memorialized in a communication log, in which he recorded interactions with a "renter" at his home, the actual murderer, an individual named, Keara Jean Green, an African-American woman with a Texas driver's license bearing a first name and middle name (different from that of Plaintiff), a physical address on her license located at 156 W. Ash St., Nolanville, Texas, 765559 (different from Plaintiff's address), with a date of birth of 8/22/1988 (different from Plaintiff's date of birth of 8/17/1988), and having short hair (different from Plaintiff who had long hair). In addition, Keara Jean Green had a different physical build than Plaintiff, whose body type is smaller and petite.

**AMENDED COMPLAINT**

28.     During said welfare check, Keara Jean Green showed LVMPD Officer Stopka her room in Mr. Aliaskari's home and the kitchen.   Officer Stopka noted the same in LVMPD communications log, together with the proper spelling of Keara's name as "Keara Jean Green," and her Texas identification information. When Officer Stopka met with Keara, he was actually meeting with the person who would ultimately confess to murder of Mr. Aliaskari – who at that time was considered a missing person.

29.     On or about March 8, 2018, Defendants MERRICK and CODY went to Mr. Aliaskari's home at 3001 Cabana Drive #47, Las Vegas, Nevada 89122, where Officer Stopka had been for the welfare check, and found the decomposing body of Mr. Aliaskari (hereinafter "Decedent"). MERRICK and CODY were assigned to investigate Decedent's murder and they immediately attempted to develop a case to solve the murder of Mr. Aliaskari.

30.     At the time they discovered Decedent's body, Defendant MERRICK also found paperwork in the name of both Decedent and a female named, Keara Jean Green. Defendant MERRICK provided this information to Defendant CODY, who performed a records check of Keara Jean Green. Defendant CODY ran a "scope" on the name Keara Green and located a "black adult female."   Detective CODY found a booking picture identified with Keara Jean Green.

31.     In furtherance of the murder investigation, on March 10, 2018, Defendant CODY interviewed a witness, Donald Earley, who told CODY that he purchased Decedent's vehicle from "Mathew Sweeney," explaining "when he purchased the (Decedent's) vehicle a black female was with Sweeney."  Exhibit "1," Declaration of Warrant/Summons N.R.S. 171.106, a true and correct copy of which is attached hereto and incorporated herein by this reference.

    (a)     Defendant "CODY showed Earley a picture" Ex. 1, p. 4. "Earley affirmed Green was the black female with Sweeney at time of the sale" of Decedent's Vehicle. Ex. 1, p. 4.

    (b)     Defendants MERRICK and CODY "located Mathew Sweeney" and interviewed him. Ex. 1, at p. 4.  Sweeney told Defendants that he met "Green at the Malasky park around the second week of January. Green was in possession of (Decedent's vehicle).  Green asked Sweeney for assistance in fixing the vehicle. Once the vehicle was fixed, Green presented a vehicle title and signed the vehicle over to Sweeney. Sweeney then sold the vehicle to his friend Donald Earley.  Ex. 1, at p. 4 (emphasis added).

32.     Plaintiff never met Earley or Sweeney as set forth above.  Plaintiff never had title to Decedent's vehicle nor did Plaintiff drive or sell Decedent's vehicle to Earley.  The true killer, Keara Jean Green, is the "black female" referenced in paragraph (a) above.

33.     Thereafter, "Detective CODY provided Detective GRIMMETT with a LVMPD booking photograph." Upon review, Detective Cannon explained his source had previously identified the female as being black female, but provided no other information." Ex. 1, at p. 3.

34.     Supposedly, in order to confirm the information in the affidavit for the warrant, Detective Cannon agreed to attempt to contact his source of information and attempt to use the photograph to confirm the identity of the black female involved. Detective Cannon also explained the source had reached out to others close to the counselor in an effort to gather more details about the black female who claimed to be responsible for the male's death.

35.     Upon information and belief, Plaintiff alleges that, at that time, neither Defendants CODY or MERRICK nor any other officer with LVMPD checked the identity of the "black female" in the body camera footage of Officer Stopka or any information that Officer Stopka obtained from his welfare check of Decedent's home on January 23, 2018.  LVMPD did not use the photograph and video compare the same with information obtained by Officer Stopka on January 23, 2018 to confirm and "gather more details" about the "black female" responsible for Decedent's murder.

36.     On March 14, 2018, Defendants MERRICK and CODY caused to be issued a document entitled a "Declaration of Warrant/Summons N.R.S. 171.106" (hereinafter "Arrest Affidavit"), a true and correct copy of which is attached hereto and incorporated herein by this reference as Exhibit "1." ("Arrest Affidavit").

37.     The March 14, 2018, Arrest Affidavit prayed for the arrest of one "Keyherra Greene." Ex. 1.  The Arrest Affidavit did not contain the name Keara Jean Green. Ex. 1.

38.     Without naming Keara Jean Green, the Arrest Affidavit contained information concerning the Keara Jean Green, the true killer's identity, to wit: The Arrest Affidavit referenced Officer Stopka's welfare check at Decedent's home, declared that Defendants CODY and MERRICK talked to Decedent's next door neighbor, a "white female" who had personal interaction with the actual killer, Keara Jean Green, as follows:

8

**AMENDED COMPLAINT**

(a)    During the initial investigation, a white female identified as Diana Sorrells arrived and informed patrol she was a resident of 3001 Cabana #47. Homicide Detective Cody conducted an interview with Sorrells. Sorrells advised she met Ghasem who she refers to as "Sam" thru an ad on Craig's list. Sorrells explained she rents one of the rooms in the residence and a black female that she knows as Keyharra (*sic*) was staying in a room with Ghasem. Sorrells believed Keyharra (*sic*) was in an intimate relationship with Ghasem. Sorrells stated she has not seen Ghasem since on or about January 22, 2018. Sorrells was aware of a "sour" odor emanating from Ghasem's room, however Keyharra (*sic*) told her it was from bad food. Sorrells explained Keyharra (*sic*) has been staying in the room since Ghasem's disappearance and often has numerous men that visit her at all hours of the day and night.

(b)    The affidavit of probable cause in support of the arrest warrant of plaintiff declares Decedent's vehicle was missing and that "Solis (*sic*) last saw Green driving (decedent's car)". Ex. 1, at p. 2.

(c)    The affidavit of probable cause in support of the arrest warrant for plaintiff declares Defendant CODY "showed Sorrells the text message picture of the black female. Sorrells identified the picture as Keyharra (*sic*). Detective Cody conducted a records check of "Keyharra Green" (*sic*) and simply ignored all other information.

39.    At time of her arrest, Plaintiff was at the home of her grandmother in San Bernardino County.

40.    At the time of her arrest, officers entered Plaintiff's grandmother's home, searched the home for Plaintiff, drew their guns on Plaintiff and told her she was under arrest.  Plaintiff repeatedly asked why she was under arrest to which the arresting officers responded they would tell her at the police station.

41.    At the time of her arrest, Plaintiff repeatedly protested and told the arresting LAPD officers that she did not know why she was being arrested, that she did not do anything wrong and that they had the wrong person.  Plaintiff also informed arresting officers that she had disabilities that required medication.

42.    The arresting officers took Plaintiff's identification information, including, her credit cards bearing her name.

43.    Following her arrest, Plaintiff was brought to the Los Angeles Police Department 77th Street, where she was told she was arrested for murder.  Plaintiff continued to protest her innocence. Plaintiff was told that they knew "it was her," and that Plaintiff was "lying."  Plaintiff was booked and processed.  Plaintiff continued to tell officers she did not murder anyone.

44.    Defendant CODY falsely claimed Plaintiff made and a statement during her arrest, "is this about murder."

45.    Plaintiff was subsequently extradited to Nevada based on the arrest warrant.

46.    On May 27, 2018, Plaintiff was brought before a Nevada Justice Court Judge. Plaintiff alleges this is the date that the statute of limitations begins to run on all Plaintiff's claims, including, false arrest and false imprisonment, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

47.    On May 27, 2018, Plaintiff was booked into CCDC and upon information and belief NAPHCARE staff received records from the Los Angeles County Sherriff's Department that indicated that Plaintiff suffered from bipolar disorder and anxiety.

48.    On May 27, 2018, at approximately 4:15 Defendant MEYERS posted Plaintiff's history of bipolar disorder and anxiety to Plaintiff's progress notes.

49.    On May 27, 2018, at approximately 4:16 P.M. Defendant MEYERS conducted a "Receiving Screening" of Plaintiff upon information and belief did not inquire about Plaintiff's history of mental illness, current mental health symptoms, or current medications, despite having been made aware of Plaintiff's history of bipolar disorder and anxiety by the Los Angeles County Sherriff.

50.    On May 27, 2018, at approximately 7:37 PM Defendant ELIZAN completed a "Mental Health Screening" but, upon information and belief, never inquired into Plaintiff's mental health history or provided Plaintiff any treatment for her bipolar disorder or anxiety.

51.    On May 27, 2018, Defendant MONTENGRO posted "I have reviewed the Chief Complaint, History of Present Illness, Past Medical/Psychiatric History, Surgical History, Social History, Medications and Drug/Food allergies. Treatment plan for this patient is standard booking and housing procedures. Patient educated regarding disease process, kite process, sick call, and emergency care.  Additional orders are as follows: UHCG test" to Plaintiff's progress notes, but failed to order any treatment or follow up for her bipolar disorder or anxiety.

**AMENDED COMPLAINT**

52.     Upon information and belief Defendants MEYERS, MONTENEGRO and ELIZAN were all aware of Plaintiff's history of bipolar disorder and anxiety but never provided Plaintiff with any medical care, psychiatric care or counseling related to her bipolar disorder or anxiety

53.     On May 31, 2018, the Special Public Defender was assigned to represent Plaintiff. Plaintiff informed the public defender she did not commit murder and they arrested the wrong person.  The public defender thereafter subpoenaed additional information from LVMPD to prove Plaintiff was wrongfully accused, arrested and incarcerated.  The subpoenaed documents revealed Keara Jean Green's employment records, Keara Jean Green's daughter's birth certificate and other identifying information that would immediately show Plaintiff had been wrongfully arrested, since Plaintiff had no children and was not from Texas.

54.     The subpoenaed information and photograph of the true killer, Keara Jean Green, did not look anything like her.  The true killer had short hair and a noticeable gap between her teeth that Plaintiff did not have.  The documents revealed that, at the time of the initial homicide investigation, Plaintiff was not the individual whose information was obtained by the LVMPD police officer Stopka at Decedent's home from the welfare check dating back to January 23, 2018.

55.     Plaintiff's public defender provided the Clark County District Attorney information that they had arrested and incarcerated the wrong individual.

56.     On June 6, 2018, Defendants were notified again that Plaintiff was the wrong suspect and had a completely different appearance, first name, middle name and date of birth as the true suspect.   Plaintiff was still incarcerated as of that date.

57.     On June 7, 2018, seventy-two days after she had been arrested, Plaintiff was released from CCDC after the Clark County District attorney facilitated an accelerated release.  Plaintiff had been incarcerated and in custody since her arrest on May 27, 2018 and remained incarcerated until dismissal of her case.

58.     On August 7, 2018, LVMPD arrested Keara Jean Green, the correct suspect and confessed killer. The actual killer Keara Jean Green confessed to LVMPD that she used a shirt to strangle 73-year-old Ghasem Aliaskari until he fell and hit his head on the bathtub.

59.     On August 8, 2018, the District Attorney dismissed the case against Plaintiff.

11

**AMENDED COMPLAINT**

60.     On September 27, 2018, a grand jury indicted Keara Jean Green for murder of Ghasem Aliaskari. During these proceedings, Defendant CODY testified she worked with Defendant MERRICK in the homicide investigation regarding the death of Ghasem Aliaskari, including the Arrest Affidavit.  Defendant CODY belatedly pulled body camera footage from the January 23, 2018 welfare check and determined that the true killer, Keara Jean Green, had a distinct gap in her teeth, that Plaintiff, whom they arrested for the murder, did not have, admitting that they arrested the wrong individual.

## DEFECTS IN ARREST AFFIDAVIT

61.     Plaintiff KEYHERRA GREEN's name was misspelled in the Arrest Affidavit as Keyharra Green D.O.B. 8/17/1988. The Arrest Affidavit does not contain the name Keara Jean Green, the true murder, even though her name (and spelling of her name) was available to LVMPD Defendants MERRICK and CODY from the start of their murder investigation.

62.     The Arrest Affidavit specifically references LVMPD patrol officer's welfare check on January 23, 2018, but fails to contain any information obtained from said welfare check, indicating that MERRICK or CODY made any effort to contact, interview the LVMPD patrol officer who conducted the welfare check, review the body camera or review communication log notes of that patrol officer's initial interaction with the actual killer, so as to specify with particularity the identity of the subject of the arrest, Arrest Affidavit and arrest warrant.

63.     Upon information and belief, when Defendants MERRICK and/or CODY did not review the body camera footage from January 23, 2018, until after they completed the Arrest Affidavit.  If they had reviewed the video prior to completing the Arrest Affidavit they would have observed that, Keara Jean Green (the actual killer), had short hair, a gap in her teeth which while Plaintiff had long hair and no gap in her teeth.  Similarly, Plaintiff had a different physical build than Keara Green, and unlike Keara Green, Plaintiff did not have children and did not have identification from Texas. Plaintiff also had a different date of birth than Keara Green, a different middle name, and they both spelled their first names differently.  CODY and MERRICK's failure to review officer Stopka's body worn camera footage of his January 23, 2020 welfare check of Ghasem Aliaskari's

**AMENDED COMPLAINT**

home was deliberately indifferent to the rights of Plaintiff in their homicide investigation and issuance of Arrest Affidavit for Plaintiff's arrest.

64. Defendants did not have probable cause to arrest Plaintiff based on the Arrest Affidavit. Defendants were deliberately indifferent to the rights of Plaintiff in execution of the same and in arresting Plaintiff based on the defective arrest warrant.

65. Plaintiff has a constitutional right to be free from continued detention after it was or should have been known that she was entitled to release.

66. Plaintiff suffered a violation of her procedural due process rights because the Defendants possessed information indicating Plaintiff should not be arrested but arrested, extradited and detained her anyway.

67. As early as January 23, 2018, when the welfare check at Decedent's home was first conducted by an LVMPD patrol officer, Defendants MERRICK, CODY and DOES 4-5 were in Plaintiff was entitled to be free from arrest, extradition and continued detention.

68. Defendants false and misleading affidavit of probable cause was submitted six (6) days after they were assigned the homicide investigation. In the Arrest Affidavit, Defendants spoke with a witness who, upon information and belief, identified a photograph of Keara Jean Green, the actual killer. The photograph and all information shown from a scope check indicates Plaintiff's date of birth is 8/17/1988 whereas the actual killer has a date of birth of 8/22/1988, has two children and was born in Iowa.

69. There is nothing in the Arrest Affidavit that connected Plaintiff with the crime other than the detectives coercive and selective identifications of a black female that did not follow protocols for LVMPD in identifying suspects related to a serious criminal case investigation prior to the filing of the Arrest Affidavit.

70. Based on a deliberately indifferent and reckless investigation with no effort to identify the correct suspect, Defendants, and each of them, arbitrarily selected Plaintiff as the suspect based on a cursory scope record check. Plaintiff was arrested at a Los Angeles home where she was living with her grandparents. The family awoke to officers ordering them to exit the home in the early morning.

**AMENDED COMPLAINT**

71. Defendants CODY and MERRICK deliberately failed to review the body camera footage from January 23, 2018, which would show clearly that Plaintiff was not the person who was seen and photographed on January 23, 2018, that is, the actual suspected killer.

72. The Arrest Affidavit was entirely based on unsupported coercive and selective photographs that were misleading to the individuals who saw the photos in order to advance their investigation without any regard to Plaintiff's rights.

## FIRST CLAIM FOR RELIEF
### VIOLATION OF FOURTH AMENDMENT PARTICULARITY REQUIREMENT
### 42 U.S.C. § 1983
### (AGAINST DEFENDANTS MERRICK, CODY and DOES 4-5)

73. Plaintiff incorporates all foregoing allegations as if fully set forth herein.

74. Plaintiff has constitutional right to be free from wrongful arrest, detention and imprisonment as secured by the Fourth Amendment and Fourteenth Amendment.

75. The arrest warrant on which Plaintiff was taken into custody did not tie in Plaintiff with the murder of Decedent and was defective for lack of particularity because it contained information exculpatory to Plaintiff.

76. Defendants MERRICK, CODY and DOES 4-5 arrested, extradited and incarcerated Plaintiff based on an Arrest Affidavit and arrest warrant which was constitutionally infirm for lack of particularity.

77. The arrest warrant incorrectly identifies Plaintiff when the facts available to Defendants clearly indicated that Keara Jean Green was the murder to wit:

    (a) Failed to include the identification details of the true suspect, Keara Jean Green, as encountered by LVMPD during a January 23, 2018 welfare check which would have been exculpatory to Plaintiff;

    (b) Failed to include some other descriptive characteristics of true suspect, Keara Jean Green, sufficient to identify her as encountered by LVMPD during its welfare check at Decedent's home and as was apparent in photographs in possession of Defendants which would have proven exculpatory to Plaintiff as the true suspect has a gap in her teeth, short hair, that Plaintiff does not have and Plaintiff had different identification information and physical build;

    (c) Failed to include descriptive characteristics and/or photograph of the true killer, including a description by which the proper subject of the arrest can be described with reasonable certainty, inclusion of which would have been exculpatory to Plaintiff, the arrest warrant only generally and deficiently

14

identifies the suspect or subject of the arrest warrant as a "black woman" thereby prejudicing Plaintiff; said arrest warrant is based on prejudicial, racially-based stereotypical notions that deprived Plaintiff of her constitutional rights;

(d)    Failed to state date of birth the true murder, which LVMPD encountered during initial welfare check at Decedent-murder-victim's home, to wit; true suspect's Texas driver's license with identifying information (date of birth, photograph, address) therein which would have been exculpatory to Plaintiff;

(e)    Improperly identifies "Keyherra Greene" with an "e" as subject of arrest warrant; Plaintiff's last name does not have an "e" at the end, while identifying the true killer's by the first name "Keyharra" with an "a" six times in the arrest warrant (which is different from Plaintiff's name which contains only one "a");

(f)    Failed to include the full name including middle initial and birth date of the true killer, Keara Jean Green, which LVMPD had actual knowledge of and/or were already in possession of before and at time of issuance of arrest warrant which would have been exculpatory to Plaintiff;

78.    As a direct and proximate result of the lack of requisite particularity of said arrest warrant and racially prejudicial and stereotypical description of the suspect as a "black woman," without further particularity, Plaintiff was arrested, seized, detained and deprived of her constitutional rights by virtue of the actions and/or inactions of Defendants LVMPD, MERRICK and/or CODY, and DOES 4-5.

79.    Defendants MERRICK and/or CODY, DOES 4-5, possessed specific, particular identifying information of the true suspect, Keara Jean Green, before and/or at the time of drafting, utterance and/or declaration of the arrest warrant such that inclusion of the same would have prevented and/or otherwise proven exculpatory to Plaintiff.

80.    The conduct of MERRICK, CODY and DOES 4-5 were willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants MERRICK, CODY and DOES 4-5.

81.    Plaintiff also seeks attorneys' fees and costs under this claim.

<u>**SECOND CLAIM FOR RELIEF**</u>
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**WRONGFUL INCARCERATION- 42 U.S.C §1983**
**(AGAINST DEFENDANTS MERRICK, CODY, AND DOES 4-5)**

82.    Plaintiff incorporates all foregoing allegations as if fully set forth herein.

83.   Plaintiff has the right to be free from deprivation of liberty as secured by the Fourteenth Amendment.

84.   Defendants MERRICK, CODY and DOES 4-5 ignored body camera footage and other information obtained early in the homicide investigation that revealed the identity of the true subject of the Arrest Affidavit of arrest for felony murder.

85.   Defendants MERRICK, CODY and DOES 4-5 violated and were deliberately indifferent to Plaintiff's constitutional rights by its decision to incarcerate Plaintiff on the arrest warrant based on the Arrest Affidavit, even though Defendants MERRICK, CODY and DOES 4-5, knew or should have known that Plaintiff did not match the Arrest Affidavit's descriptors, to wit:

86.   The Arrest Affidavit had the wrong spelling of both the actual killer and the Plaintiff, identifying "Keyharra Green," the Arrest Affidavit contains multiple witness statements who could personal identify the actual suspect/killer; the Arrest Affidavit states that the true suspect provided her identification information to a LVMPD patrol officer, including, information which exonerated Plaintiff; the Arrest Affidavit references a photograph of the actual suspect which could have prevented the arrest, extradition and incarceration of Plaintiff; the Arrest Affidavit contains information indicating that the true subject of the Arrest Affidavit could have been easily ascertained by viewing the body camera footage of the patrol officer who performed a welfare check at the decedent-victim's home; and the Arrest Affidavit generally describes the suspect as a "black woman" without further descriptive information, despite admittedly having possession of a photograph, resulting in deprivation of Plaintiff's constitutional rights.

87.   Defendants MERRICK, CODY and DOES 4-5 decision to issue an Arrest Affidavit leading to the arrest, extradition and incarceration of Plaintiff for 72 days lacked procedural safeguards to prevent her continued mistaken detention.

88.   Defendants MERRICK, CODY and DOES 4-5 failed to investigate Plaintiff's claim of mistaken identity after her repeated protests.

89.   Based on defects in the Arrest Affidavit, Defendants MERRICK and CODY did not have probable cause to believe that Plaintiff was the person in the arrest warrant.

**AMENDED COMPLAINT**

90.     Defendants MERRICK, CODY and DOES 4-5 possessed information indicating Plaintiff should be released from incarceration but did not release her until 72 days after her arrest and extradition.

91.     The conduct of Defendants MERRICK, CODY and DOES 4-5, were willful, wanton, malicious, and done with reckless disregard, deliberate indifference for the rights and safety of Plaintiff and therefore justifies the imposition of exemplary and punitive damages as to Defendants MERRICK, CODY, and DOES 4-5.

92.     Plaintiff also seeks attorneys fees and costs under this claim.

### THIRD CLAIM FOR RELIEF
### UNREASONABLE SEARCH AND SEIZURE – SEARCH AND SEIZURE WITHOUT REASONABLE SUSPICION – PROBABLE CAUSE (42 U.S.C. §1983)
### (Against Defendants MERRICK, CODY and DOES 4-5)

93.     Plaintiff incorporates all foregoing allegations as if fully set forth herein.

94.     Defendants MERRICK, CODY and DOES 4-5 caused Plaintiff to be seized and searched in violation of her right to be secure in her person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

95.     In seizing Plaintiff's person Defendants MERRICK, CODY and DOES 4-5 acted intentionally and the seizure was unreasonable;

96.     Defendants MERRICK, CODY and DOES 4-5 did not have a reasonable suspicion that Plaintiff upon her seizure was engaged in a crime or other conduct justifying arrest;

97.     The length and scope of Plaintiff's seizure was unreasonable.

98.     As a result of the conduct of MERRICK, CODY and DOES 4-5, they are liable for Plaintiff's injuries, either because they were integral participants in the wrongful seizure and search, or because they failed to intervene to prevent these violations.

99.     The PLAINTIFF was seized, detained and searched without reasonable suspicion or probable cause.

**AMENDED COMPLAINT**

100.     The conduct of MERRICK and CODY was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore justifies the imposition of exemplary and punitive damages as to Defendants MERRICK and CODY.

101.     Plaintiff also seeks attorneys fees and costs under this claim.

**FOURTH CLAIM FOR RELIEF**
**Substantive Due Process (42 U.S.C. § 1983)**
**Fourteenth Amendment to the U.S. Constitution**
**(AGAINST LVMPD, MERRICK, CODY, AND DOES 4-10)**

102.     Plaintiff incorporates all foregoing allegations as if fully set forth herein.

103.     Plaintiff had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, the conduct of the defendants as described herein.

104.     As a result of the grossly inadequate investigation and Arrest Affidavit force by MERRICK, CODY and DOES 4-5, and failure of said defendants to intervene, Plaintiff was unlawfully seized, detained and searched and accused of homicide.

105.     MERRICK, CODY and DOES 4-5, acting under color of state law, thus violated Plaintiff's substantive Fourteenth Amendment right to be free from unreasonable searches and seizures, the loss of property and invasion of privacy.

106.     The aforementioned actions of MERRICK, CODY and DOES 4-5, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the rights of Plaintiff and with the purpose to harm unrelated to any legitimate law enforcement objective.

107.     As a direct and proximate cause of the acts of MERRICK, CODY and DOES 4-5, Plaintiff experienced extreme fear, pain, suffering, humiliation, loss of physical wholeness, loss of quality and enjoyment of life, deprivation of rights and other injuries and damages.

108.     As a result of the conduct of MERRICK, CODY and DOES 4-5, they are liable for Plaintiff's injuries, either because they were integral participants in the denial of due process, or because they failed to intervene to prevent these violations.

109. The conduct of MERRICK and CODY was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore justifies the imposition of exemplary and punitive damages as to Defendants MERRICK and CODY.

110. Plaintiff also seeks attorneys' fees and costs under this claim.

**FIFTH CLAIM FOR RELIEF**
**Denial of Medical Care (42 U.S.C. § 1983)**
**Amendment to the U.S. Constitution**
**(Against Defendants ELIZAN, MONTENEGRO, MYERS and NAPHCARE)**

111. Plaintiff incorporates all foregoing allegation as if fully set forth herein.

112. When Plaintiff was booked into the CCDC on May 27, 2018, she was suffering from bipolar disorder and anxiety.

113. bipolar disorder and anxiety are serious medical conditions that when left untreated create a substantial risk of serious harm.

114. As an Emergency Medical Technician Defendant MYERS was aware of the substantial risk of serious harm posed to Plaintiff if her bipolar disorder and anxiety were left untreated.

115. As a Registered Nurse Defendant ELIZAN was aware of the substantial risk of serious harm posed to Plaintiff if her bipolar disorder and anxiety were left untreated.

116. As a Nurse Practitioner Defendant MONTENENGRO was aware of the substantial risk of serious harm posed to Plaintiff if her bipolar disorder and anxiety were left untreated.

117. Upon information and belief, on May 27 2018, Defendant's MYERS, ELIZAN, and MONTENENGRO all became aware of Plaintiff's history of bipolar disorder and anxiety.

118. On May 27, 2018, Defendant's MYERS and ELIZAN conducted examinations of Plaintiff where they should have inquired about Plaintiff's mental health history.

119. Upon information and belief, Defendants MYERS and ELIZAN failed to inquire about Plaintiff's mental health history during those exams, or provide Plaintiff with any treatment for her bipolar disorder or anxiety

**AMENDED COMPLAINT**

120.    On May 27, 2018, Defendant MONTENEGRO reviewed the exams performed by MYERS and ELIZAN and failed to provide Plaintiff with any medical care or treatment for her bipolar disorder or anxiety.

121.    Plaintiff had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be provided with adequate medical care while a pretrial detainee at CCDC

122.    As a result of the grossly inadequate medical care provided by Defendants ELIZAN, MONTENEGRO, MYERS, Plaintiff suffered needlessly.

123.    As NAPHCARE employees at CCDC ELIZAN, MONTENEGRO, MYERS were acting under color of state law, thus violated Plaintiff's substantive Fourteenth Amendment right to adequate medical care.

124.    The aforementioned actions of ELIZAN, MONTENEGRO and MYERS along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the rights of Plaintiff.

125.    As a direct and proximate cause of the acts of ELIZAN, MONTENEGRO and MYERS, Plaintiff experienced extreme emotional pain, suffering, loss of physical wholeness, loss of quality and enjoyment of life, deprivation of rights and other injuries and damages.

126.    As a result of the conduct of ELIZAN, MONTENEGRO and MYERS, they are liable for Plaintiff's injuries, because they were integral participants in the denial of adequate medical care to Plaintiff.

127.    The conduct of ELIZAN, MONTENEGRO, and MYERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore justifies the imposition of exemplary and punitive damages as to Defendants ELIZAN, MONTENEGRO, and MYERS.

128.    Plaintiff also seeks attorneys' fees and costs under this claim.

### SIXTH CLAIM FOR RELIEF
**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**
**(Against Defendants DOES 6-10, NAPHCARE, LVMPD)**

129.    Plaintiff incorporates all foregoing allegations as if fully set forth herein.

20

AMENDED COMPLAINT

130. Plaintiff was deprived of her constitutional rights by Defendants and their employees acting under color of state law; Defendants and their employees were acting under color of state law; Defendants have customs or policies which amount to deliberate indifference to constitutional rights; that these policies are the moving force behind the constitutional violations.

131. On and for some time prior to May 7, 2018 and continuing, Defendants DOES 6-10, deprived Plaintiff of the rights and liberties secured to her by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a) Employing and retaining as police officers and other personnel, including MERRICK, CODY and DOES 4-5, who Defendants LVMPD and DOES 6-10, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written LVMPD's policies, including reviewing all available evidence, including exculpatory evidence, in order to make certain that person that they are seeking an Arrest Affidavit for is the actual suspect in the crime and reviewing all evidence including photographs and body cam footage;

(b) Of inadequately supervising, training, controlling, assigning, and disciplining LVMPD Police Officers, and other personnel, including MERRICK, CODY and DOES 4-5, who Defendants LVMPD and DOES 6-10 knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity for coercive and reckless investigations including suggestive identification and inadequate investigation of evidence;

(c) By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants MERRICK, CODY and DOES 4-5, who are Police Officers of LVMPD;

(d) By failing to discipline LVMPD Police Officers' conduct, including but not limited to, unlawful detention and deficient investigations and false Arrest Affidavit that are deficient in requisite particularity so as to increase likelihood of false arrests and incarcerations, such as that which happened to Plaintiff;

(e) By ratifying the intentional misconduct of Defendants MERRICK, CODY and DOES 4-5, who are Police Officers of LVMPD;

(f)     By having and maintaining an unconstitutional policy, custom, and practice of seizing, detaining and searching individuals without probable cause or reasonable cause or reasonable suspicion, and issuing declarations or affidavits of arrest, submitting these for judicial determination, without the requisite particularity and or safeguards to ensure that the proper subject of the warrant is arrested, and not an innocent person, such as Plaintiff; By having inadequate training regarding these subjects including making of declarations of arrest warrants without verifying spelling of names and identities of individuals beyond general racial descriptors, the policies, customs, and practices of LVMPD and DOES 6-10, were done with a deliberate indifference to individuals' safety and rights, particularly that there was no reason to believe that Plaintiff was the person identified in the warrant resulting in an innocent persons incarceration for felony murder for two months and eleven days (72 days total);

(g)     By failing to properly investigate claims of unlawful arrest, detention, searches, and seizures by LVMPD Police Officers;

(h)     By failing to institute appropriate policies regarding constitutional procedures and practices for use filing reports and submitting affidavits;

(i)     By maintaining totally inadequate training of its officers and other LVMPD employees, including defendants MERRICK, CODY and DOES 4-5, on the aforementioned issues, including the minimally required constitutional particularity required of an arrest warrant, so as to avoid arrest of innocent persons, use of searches and seizures, despite clear need for such training.

(j)     Having and maintaining an unconstitutional policy, custom, and practice of failing to provide adequate mental health screenings to pretrial detainees booked into the Clark County Detention Center, failing to order mental health care for pretrial detainees with known histories of serious mental health problems incarcerated at the CCDC, and failing to maintain adequate records related to a pretrial detainees mental health.

(k)     By employing and retaining as health care providers and other personnel, including Defendants ELIZAN, MONTENEGRO, MYERS, and DOES 6-10, at all times material herein knew or reasonably should have known had dangerous propensities for providing constitutionally adequate health care, for failing to properly screen their patients, for reviewing healthcare records, and treating mental illness;

(l)     Of inadequately supervising, training, controlling, assigning, and disciplining NAPHCARE healthcare providers, and other personnel, including Defendants ELIZAN, MONTENEGRO, MYERS, who Defendants LVMPD, NAPHCARE and DOES 6-10 knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity to provide deliberately indifferent and constitutionally deficient healthcare;

(m)     By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants ELIZAN, MONTENEGRO, MYERS, who are Police Officers of LVMPD;

(n)     By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the deliberate

22

**AMENDED COMPLAINT**

indifference by Defendants ELIZAN, MONTENEGRO, MYERS, who are healthcare providers employed by NAPHCARE;

(o) By failing to discipline NAPHCARE employee conduct, including but not limited to, unlawful detention and deficient investigations and false Affidavit of Probable Cause in support of the Arrest Warrant for Plaintiff that are deficient in requisite particularity so as to increase likelihood of false arrests and incarcerations, such as that which happened to Plaintiff;

(p) By ratifying the intentional misconduct of Defendants ELIZAN, MONTENEGRO, MYERS, who are healthcare providers employed by NAPHCARE;

(q) By maintaining totally inadequate training of its officers and ELIZAN, MONTENEGRO, MYERS, who are healthcare providers employed by NAPHCARE, on the aforementioned issues, including the minimally required constitutional level of health care, despite clear need for such training;

132. By reason of the aforementioned policies and practices of Defendants LVMPD NAPHCCARE, and DOES 6-10, Plaintiff was severely injured and subjected to fear, pain, suffering, humiliation, and the deprivation of her rights as alleged above.

133. Defendants LVMPD, NAPHCARE, and DOES 6-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the rights of Plaintiff and other individuals similarly situated.

134. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants LVMPD, NAPHCARE and DOES 6-10, acted with an intentional, reckless, and callous disregard for the life, safety, and rights of Plaintiff. Defendants LVMPD and DOES 6-10, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

135. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants LVMPD, NAPHCARE and DOES 6-10, were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff.

136.   By reason of the aforementioned acts and omissions of Defendants LVMPD and DOES 6-10, PLAINTIFF experienced extreme fear, pain, suffering, humiliation, loss of physical wholeness, loss of quality and enjoyment of life, deprivation of rights and other injuries and damages.

137.   Accordingly, Defendants LVMPD and DOES 6-10, each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

138.   Plaintiff also seek attorneys fees and costs under this claim.

**SEVENTH CLAIM FOR RELIEF**
**DISABILITY DISCRIMINATION**
**§ 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et. seq.***
**(AGAINST DEFENDANT LVPMD and NAPHCARE)**

139.   Plaintiff incorporates all foregoing allegations as if fully set forth herein.

140.   Plaintiff suffers from and was diagnosed with a mental or psychological disabilty.

141.   Plaintiff is a qualified individual with a disability as defined by the ADA and Rehabilitation Act.

142.   Defendant LVMPD is an entity covered by the requirements of the ADA and Rehabilitation Act.

143.   Defendant NAPHCARE is an entity covered by the requirements of the ADA and Rehabilition Act.

144.   Plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs or actitivites.

145.   At all times relevant hereton, Defendants MERRICK, CODY, ELIZAN, MONTENEGRO, MYERS, and DOES 4-10, were employees of NAPHCARE and LVMPD and were aware or should have been aware that Plaintiff suffered from a mental or psychological disability and that she required medication for the same.

146.   Defendants LVMPD, and NAPHCARE had a duty to accommodate Plaintiff's mental disabilities and need for medication when she was arrested and during the time of her detention and incarceration.

147.    Defendants LVMPD and NAPHCARE had a duty to take Plaintiff's mental disability into account when they arrested and housed her, including, but not limited to, engaging in non-threatening communication, respecting her comfort zone, considering her need for medication to manage her disability, and using means to defuse the situation.

148.    ELIZAN, MONTENEGRO and MYERS, while employed by NAPHCARE and LVMPD discriminated against Plaintiff on the basis of and/or by reason of her disabilty by failing, refusing and/or neglecting to accommodate her disability during her arrest and incarceratinon by denying and excluding Plaintiff access to all her required medications as required by her disabilities despite her being aware of her psychiatric history.

149.    As a direct and proximate result of Defendants actions herein, Plaintiff suffered great pain of body and mind, severe mental emotional anguish and distress, loss of enjoyment of life, and other damages to Plaintiff's detriment in an amount to be determined according to proof at time of trial.

150.    Defendants actions herein were intentional, deliberate, willful, reckless, and conducted in callous disregard for the harm caused to Plaintiff.

151.    Plaintiff is entitled to all legal and equitable remedies available to her under the Americans with Disabilities Act and the Rehabilitation Act as result of Defendants conduct.

152.    Defendants LVMPD and NAPHCARE are jointly and severally liable to Plaintiff for damages related to her ADA and Rehabilitation Act claims, inasmuch as NAPHCARE is an agent of LVMPD in the administration of LVMPD's duties to operate CCDC.

153.    Plaintiff seeks an award of attorneys' fees and costs.

**EIGHTH CLAIM FOR RELIEF**
**False Arrest/False Imprisonment**
**(Nevada State Law Claim)**
**(Against Defendants LVMPD, MERRICK, CODY and DOES 4-5)**

154.    Plaintiff incorporates all foregoing allegations as if fully set forth herein.

155.    MERRICK, CODY and DOES 4-5, while working as police officers for the LVMPD, and acting within the course and scope of their duties, intentionally deprived Plaintiff of her freedom of movement by failing to conduct a thoroughly and proper identification and failing to arrest the

correct suspect whose information was known or should have been known to defendants. MERRICK, CODY and DOES 4-5 also detained Plaintiff without reasonable suspicion or probable cause.

156.    Plaintiff did not knowingly or voluntarily consent. Any purported consent was the result of duress and threats from Defendants.

157.    The conduct of MERRICK, CODY and DOES 4-5 was a substantial factor in causing the harm of Plaintiff.

158.    LVMPD is vicariously liable for the wrongful acts of Defendants MERRICK, CODY and DOES 4-5 because their acts were done under color of law with LVMPD's full authority and ratification.

159.    The conduct of MERRICK and CODY was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling PLAINTIFF to an award of exemplary and punitive damages.

160.    Plaintiff seeks an award of attorneys' fees and costs.

## NINTH CLAIM FOR RELIEF
### Negligence (Nevada State Law Claim)
(Against LVMPD, MERRICK, CODY, and DOES 6-10)

161.    Plaintiff incorporates all foregoing allegations as if fully set forth herein.

162.    As state actors, Defendants owed Plaintiff a duty of care to carry out their law enforcement operations in such a manner as not to cause violations of her rights, including rights under Nevada state law and the Fourth and Fourteenth Amendments to the United States Constitution.

163.    The actions and inactions of the Defendants were negligent and reckless, including but not limited to:

(a)    the failure to properly and adequately assess the need to seize, detain and search against Plaintiff;

(b)    the negligent tactics and handling of the investigation of Plaintiff, including investigations and review of evidence including suggestive photo identifications, and continuing to incarcerate Plaintiff despite substantial evidence that Plaintiff was not the suspect CODY, MERRICK, and DOES 4-5 were looking for.

26

**AMENDED COMPLAINT**

(c)    the negligent seizure, detention and search against Plaintiff;

(d)    the failure to properly train and supervise employees, both professional and non-professional, including MERRICK, CODY and DOES 4-10;

(e)    the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Plaintiff; and

(f)    the negligent handling of evidence and witnesses.

164.    As a direct and proximate result of defendants' conduct as alleged above, and other undiscovered negligent conduct, Plaintiff was caused to experience extreme fear, pain, suffering, humiliation, loss of physical wholeness, loss of quality and enjoyment of life, deprivation of rights and other injuries and damages.

165.    LVMPD is vicariously liable for the wrongful acts of MERRICK, CODY, and DOES 4-10 because their acts affirmatively caused the harm to Plaintiff.

166.    The negligent acts of MERRICK, CODY, and DOES 4-10 resulted in extreme fear, pain, suffering, humiliation, loss of physical wholeness, loss of quality and enjoyment of life, deprivation of rights and other injuries and damages to Plaintiff.

167.    Plaintiff seeks an award of attorneys' fees and costs.

## TENTH CLAIM FOR RELIEF
### Malicious Prosecution
### Fourth Amendment Without Reasonable Suspicion or Probable Cause (42 U.S.C. § 1983)
### (against MERRICK, CODY, LVMPD and DOES 4-10)

168.    Plaintiff incorporates all foregoing allegations as if fully set forth herein.

169.    Defendants, and each of them, instituted a criminal action against the Plaintiff.

170.    The prosecution of Plaintiff was resolved in Plaintiff's favor; she was released as described above.

171.    There was no probable cause to initiate criminal action against Plaintiff.

172.    Defendants acted maliciously and with reckless disregard in instituting and maintaining a criminal action against Plaintiff.

173.    Plaintiff requests an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants as follows:

     A.    For compensatory damages under federal and state law, in the amount to be proven at trial;

     B.    For general damages under federal and state law, in the amount to be proven at trial;

     C.    For punitive damages against the individual defendants in an amount to be proven at trial;

     D.    For interest;

     E.    For reasonable costs of this suit and attorneys' fees; and\

     F.    For such further other relief as the Court may deem just, proper, and appropriate.

DATED: December 22, 2020.       PETER GOLDSTEIN LAW CORP


               By:  /s/ Peter Goldstein
                    PETER GOLDSTEIN, ESQ.
                    Attorneys for Plaintiff
                    *KEYHERRA GREEN*


## **DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demands a trial by jury.

DATED: December 22, 2020.       PETER GOLDSTEIN LAW CORP


               By:  /s/ Peter Goldstein
                    PETER GOLDSTEIN, ESQ.
                    Attorneys for Plaintiff
                    *KEYHERRA GREEN*

**AMENDED COMPLAINT**

EXHIBIT 1

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
# DECLARATION OF WARRANT/SUMMONS
## (N.R.S. 171.106)
## (N.R.S. 53 amended 7/13/1993)

Event Number: **180308-3899**

| | | |
|---|---|---|
| **STATE OF NEVADA** | ) | Greene, Keyherra |
| | ) **ss:** | ID#: 7512700 |
| **COUNTY OF CLARK** | ) | DOB: 08/17/1988  SS#: 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 |

F. Merrick, being first duly sworn, deposes and says:

That he is a Detective with the Las Vegas Metropolitan Police Department, being so employed for a period of 16 years, assigned to investigate the crime(s) of Open Murder committed on or about January 22nd, 2018- January 23rd, 2018, which investigation has developed Greene, Keyherra as the perpetrator thereof.

THAT DECLARANT DEVELOPED THE FOLLOWING FACTS IN THE COURSE OF THE INVESTIGATION OF SAID CRIME, TO WIT:

On January 23rd, 2018, under LVMPD event 180123-1524, Masha Aliaskari requested a welfare check of her father Ghasem Aliaskari at his home at 3001 Cabana Drive #47, Las Vegas, Nevada 89122 due to unusual phone calls placed to her the day prior. Patrol responded to the address and contacted a Keyherra Green D.O.B 8/17/1988, who advised Ghasem had just left for Arizona and should return near the beginning of February, 2018. On March 3, 2018, Masha Aliaskari filed a missing persons report under LVMPD event 180302-1764. Aliaskari advised the LVMPD she had called her father's cellular number of 562-508-7153 and a black female answered and advised she had the wrong number. Aliaskari noted over 4000 phone calls and text messages on her father's phone since their last communication on January 22, 2018. Aliaskari explained that this type of behavior was unusual for her father Ghasem. On March 4, 2018, Aliaskari's brother Aria texted her father's number of 562-508-7153. Aria received a response which let him believe someone was in possession of that phone. The response text stated "U can come over at one, r u 420 friendly?" Aria responded "yup.. are you alone?" Aria then received a text message which included a self-picture of a black female approximately 25 years of age sitting on a bath tub. Arias recognized the tub of that which belonged in his father Ghasem's house.

On March 8th, 2018, the Aliaskari family hired a private investigator to respond to 3001 Cabana Drive #47. At approximately 1900 hours, the investigator arrived and detected a foul odor coming from inside the residence. The LVMPD was notified, patrol arrived, made entry into the residence and discovered the badly decomposed body of a male wrapped in plastic bags inside a closet. This body was later

Disc.00002

identified as Ghasem Aliaskari D.O.B 1/5/1945. During the initial investigation, a white female identified as Diana Sorrils D.O.B 2/25/1966 arrived and informed patrol she was a resident of 3001 Cabana #47. Homicide Detective Cody conducted an interview with Sorrils. The following is a synopsis of that interview. Sorrils advised she met Ghasem who she refers to as "Sam" thru an ad on Craig's list. Sorrils explained she rents one of the rooms in the residence and a black female that she knows as Keyharra was staying in a room with Ghasem. Sorrils believed Keyharra was in an intimate relationship with Ghasem. Sorrils stated she has not seen Ghasem since on or about January 22, 2018. Sorrils was aware of a "sour" odor emanating from Ghasem's room, however Keyharra told her it was from bad food. Sorrils explained Keyharra has been staying in the room since Ghasem's disappearance and often has numerous men that visit her at all hours of the day and night.

Detective Cody showed Sorrils the text message picture of the black female. Sorrils identified the picture as Keyharra. Detective Cody conducted a records check of Keyharra Green D.O.B 8/17/1988 and confirmed the text picture received by Arias was in fact Green.

Detectives determined that Ghasem's 2002 Silver Dodge Ram pickup, bearing Virginia VNW8615 was missing and Sorrils last saw Green driving it.

On March 9, 2018, an autopsy was performed on the body of Ghasem Aliaskari. Dr. J. Corneal of the Clark County Coroner's office determined Ghasem Aliaskari died as a result of blunt force trauma to the chest which had 3 broken ribs, neck which had subcutaneous bleeding to the strap muscles which indicates strangulation and head which had a brain bleed which indicated blunt force trauma to the head and the manner of death was homicide. Dr. Corneal told Detective Merrick that she was going to pend the final report until she could meet with her colleagues.

Detective Cody contacted Masha Aliaskari who advised she is the account holder of Ghasem's cellular phone and that numerous calls and text messages are being received currently on the phone.

On 02-02-2018, Homicide Detective Grimmett was contacted by Detective C. Cannon who relayed the following information:

Detective Cannon had received information from a source, who wished to remain anonymous, regarding a recent murder. Detective Cannon explained his source claimed an unidentified female, who resided at 3001 Cabana Drive, Space # 147, Las Vegas, Nevada, had killed her significant other and hid his body

in a bedroom closet. The female claimed motivation was based on long term physical, mental, and sexual abuse. Detective Cannon explained the source had received the information from another person who had received the information from a counselor out of the state of California.

At approximately 1400 hours, Detective Grimmett contacted LVMPD Patrol Sergeant Harrison Potter. and requested SEAC Patrol Officers conduct a welfare check of the occupant of 3001 Cabana Drive, Space # 147. Sergeant Potter responded under LVMPD event number 180202-2437. Upon arrival, Officer contacted Paul Walsh who cooperative and claimed there was no one in distress or being abused. Officers conducted a check of the interior and found nothing to corroborate the information provided by Detective Cannon.

On 03-08-2018, Homicide Detective Cody briefed Detective Grimmett regarding event 180308-3899. Detective Cody explained the body of a deceased male had been located in a bedroom closet at 3001 Cabana Drive, Space # 47 and the suspect had been identified as a black female named Keyherra Green. Given the similarities, Detective Grimmett advised Detective Cody of the information he had received from Detective Cannon.

Detective Cody provided Detective Grimmett with a LVMPD booking photograph of Green and asked Detective Grimmett to forward to Detective Cannon. Upon review, Detective Cannon explained his source had previously identified the female as a being black, but provided no further information. Detective Cannon agreed to attempt to contact his source of information and attempt to use the photograph to confirm the identity of the black female involved. Detective Cannon also explained the source had reached out to others close to the counselor in an effort to gather more details about the black female who claimed to be responsible for the male's death.

The information that Detective Grimmett had received matched the crime scene except for the space number. Detective Grimmett sent patrol to space 147 and the space Alaiskari was found in was 47.

On March 9th, 2018, a Pen Register for Aliaskari cell phone 562-508-7153 was authored by Detective Cody and approved by Deputy District Attorney Pamela Weckerly and granted by the Honorable Judge Alf. The victim's cell phone was last in the area of Tropicana and Spencer. Detectives conducted a records check and found Greene had been stopped outside of an apartment complex at 1701 Katie Avenue, Las Vegas, NV.

## CONTINUATION

Event #: ___180308-3899___

On March 10th, 2018 Detectives Merrick and Cody located Aliaskari's truck at the apartment complex located at 1701 Katie Avenue, Las Vegas, NV. A white male adult later identified as Donald Earley D.O.B 8/8/1983 attempted to enter Aliaskari's truck. Detective Cody conducted an interview with Earley. Earley told Detective Cody he had purchased the vehicle from a friend identified as Mathew Sweeney around January 12, 2018. Earley explained when he purchased the vehicle a black female was with Sweeney. Detective Cody showed Earley a picture of Green. Earley affirmed Green was the black female with Sweeney at the time of the sale. Earley showed Detective Cody a signed vehicle tittle and a bill of sale for the vehicle.

On March 10, 2018, Detective's Merrick and Cody located Mathew Sweeney ID# 2858693 at the Clark County Detention Center. Detectives conducted an interview with Sweeney who relayed the following. Sweeney met Keyherra Green at the Molasky park around the second week of January. Green was in possession of a silver 2002 Dodge Ram truck. Green asked Sweeney for assistance in fixing the vehicle. Once the vehicle was fixed, Green presented a vehicle title and signed the vehicle over to Sweeney. Sweeney then sold the vehicle to his friend Donald Earley.

On March 10th, 2018 Detectives searched Aliaskari's mobile home located at 3001 Cabana Drive, space B47, Las Vegas, NV 89122. During the search detectives noticed a yellow liquid that had saturated the floor of the closet where Aliaskari was found. Detectives then found a suit case with paper work that indicated it was Greene's suitcase. Inside the suitcase detectives located two gallons of pool acid which was the same color and consistence of the liquid found in the closet where Aliaskari was found.

Wherefore, Declarant prays that a Warrant of Arrest be issued for suspect Greene, Keyherra on the charge(s) of Open Murder.

**I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.**

**Executed on this 14th day of March, 2018.**

DECLARANT: _____ 7567

WITNESS: _____        DATE: _3/14/18_