UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KEYHERRA GREEN,<br><br>           Plaintiff,<br><br>  v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT et. al,<br><br>           Defendant. | Case No. 2:20-cv-00769-KJD-DJA<br><br>ORDER |

  Presently before the Court is Defendant Las Vegas Metropolitan Police Department's Motion to Dismiss (#78). Plaintiff filed an opposition (#84) to which Defendant replied (#85).

  I.  <u>Factual and Procedural Background</u>

  Plaintiff Keyherra Green ("Green") filed this action against Defendants Las Vegas Metropolitan Police Department ("Metro"), the Clark County Detention Center ("CCDC"), Officer Fred Merrick ("Officer Merrick"), Officer Lora Cody ("Officer Cody"), Menenlyn Elizan ("Elizan"), Ray Montenegro ("Montenegro"), and Gwendolyn Myers ("Myers") after Green was arrested for a murder she did not commit. (#74). After being detained for 72 days, Green brings four causes of action: (1) two 42 U.S.C. § 1983 claims for violating Plaintiff's due process rights by subjecting the Plaintiff to criminal charges based on deliberately-fabricated evidence; and (2) for unconstitutional customs or policies; (3) a federal claim for disability discrimination and; (4) a malicious prosecution claim. Id.

  On January 22, 2018, the daughter of a man named Ghasem Aliaskari ("Aliaskari") requested that Metro perform a welfare check at Aliaskari's house. Id. at 6. On January 23, 2018, Metro officer Danial Stopka ("Officer Stopka")[1] arrived at Aliaskari's residence. Id. Officer Stopka

---

[1] Officer Stopka is not a defendant in this action.

spoke with Keara Jean Green ("Keara Green")[2], who claimed to rent a room from Aliaskari. Id. Officer Stopka's body camera recorded his interaction with Keara Green. Id.

On or about March 8, 2018, Officer Merrick and Officer Cody discovered Aliaskari's body at his house and began an investigation into his death. Id. at 7. The investigation showed evidence that Keara Green lived with Aliaskari. Id. Officer Cody spoke with a witness who had purchased Aliaskari's car after his death. Id. at 7. The witness told Officer Cody that he purchased the car from a man who was accompanied by a "black female." Id. He identified a photo of Keara Green as the black female involved with the sale of Aliaskari's car. Id. An interview with Aliaskari's renter, Diana Sorrils ("Sorrils"), revealed that she rented a room while "a black female that she knows as Keyarra was staying in a room with [Aliaskari]." Id. at 9. Sorrils indicated that she had not seen Aliaskari since January 22, 2018, but Keyarra had been staying in Aliaskari's room. Id. The officers then sought Keara Green, with whom they had spoken at the original welfare check. Id. at 8. The similarity in names led to Plaintiff Keyherra Green being arrested by Los Angeles Police Department officers on March 27, 2018. Id. at 9.

Plaintiff was detained in California from March 27, 2018 to May 27, 2018. (ECF #54, at 5). While in custody in California, Plaintiff waived her right to require the issuance and service of a warrant of extradition to Las Vegas and she elected to return to Las Vegas. Id. Plaintiff was brought before a Las Vegas Justice Court judge on May 27, 2018, and was sent to detention at CCDC. (ECF #39, at 10).

A public defender was assigned to represent Plaintiff on May 31, 2018. Id. at 11. Plaintiff told her attorney that she had not committed the murder. Id. The attorney subpoenaed identifying information from Metro to prove that Plaintiff was not guilty. Id. The subpoenaed documents revealed Keara Green's employment records and her daughter's birth certificate; however, Plaintiff had no children and was not from Texas, where the identifying information indicated Keara Green was from. Id. The subpoenaed information also revealed a photograph of Keara Green, showing that Keara Green had short hair and a gap in her teeth that Plaintiff did not have. Id. Based on the information, it was evident that Plaintiff was not the person present at the

---

[2] Keara Green is not the Plaintiff, Keyherra Green.

original welfare check of Aliaskari's home. Id. Plaintiff's attorney notified the Clark County District Attorney of the wrongful arrest and later on June 6, 2018, notified Defendants that Plaintiff was the wrong suspect. Id. Plaintiff was released from CCDC on June 7, 2018. Id. On August 7, 2018, Metro arrested Keara Green who subsequently confessed to Aliaskari's murder. Id.

After Plaintiff filed her Second Amended Complaint, Metro moved the Court for judgment on the pleadings in accordance with Federal Rule of Civil Procedure ("Rule") 12(c). The Court held that Plaintiff's Second Amended Complaint alluded to, but did not sufficiently allege a Devereaux claim, so the Court ordered Plaintiff "file an amended complaint that satisfies the requirements of Iqbal and Twombly… or abandon her Deveraux claim." (#73). Plaintiff filed a Third Amended Complaint ("TAC") on April 13, 2022. (#74). Metro brings the present motion, asking the Court to dismiss the complaint for violating Rule 8(a)(2). (#78, at 5).

II.     Analysis

Rule 8(a)(2) provides, in relevant part, that "[a] pleading that states a claim for relief must contain… a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. Pro. 8(a)(2). While "verbosity or length is not by itself a basis for dismissing a complaint based on Rule 8(a)" the Ninth Circuit has held that dismissing a complaint that is "argumentative, prolix, replete with redundancy, and largely irrelevant" is appropriate. Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 63 F.3d 1047, 1058 (9th Cir. 2011). The Ninth Circuit has also upheld dismissals of cases that are too "verbose, confusing and almost entirely conclusory" as well as complaints that were "highly repetitious, or confused, or consisted of incomprehensive rambling." Id. at 1059. "Prolix, confusing complaints… impose unfair burdens on litigants and judges" which can lead to "discovery disputes and lengthy trials, prejudicing litigants in other cases who follows the rules, as well as defendants in the case in which the prolix pleading is filed." Id.

Motions for judgment on the pleadings pursuant to Rule 12(c) are "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

1    A complaint does not require "detailed factual allegations," but "requires more than labels
2    and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell
3    Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a
4    complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
5    plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S.
6    at 557). All "[f]actual allegations must be enough to raise a right to relief above the speculative
7    level." Twombly, 550 U.S. at 555.

8    Metro brings this motion, arguing the TAC violates Rule 8(a)(2) because it is 144 pages long,
9    with sixty-seven of those pages being the complaint, and the rest, exhibits. (#78, at 2-3). Metro
10   asserts that the "content of [the] document largely amounts to speculative argument, repetitive
11   accusations, meandering legal theories, and counsel's personal frustrations with discovery during
12   this case." Id. at 3. Metro cites Brown v. Tromba, No. 2:17-cv-02396-APG-BNW, 2021 WL
13   2007386 (D. Nev. May 18, 2021) where a motion to amend a complaint was denied for being too
14   long and too confusing.

15   Plaintiff argues that the present motion is an attempt to put Plaintiff in a "Catch-22" situation,
16   because Plaintiff was ordered to amend her second complaint by inserting additional allegations
17   and factual details in order to meet the Iqbal/Twombly standard, and now that they have more
18   facts, Metro objects again. (#84, at 3-4). Plaintiff argues that the length of the TAC complaint is
19   necessary because the Devereaux claim actually states three separate legal theories that need
20   consideration. Id. at 6. Finally, Plaintiff asks that if the Court decides to dismiss the complaint,
21   the Court should do so without prejudice to allow an opportunity to amend. Id. at 8.

22   The Court holds that Plaintiff's TAC complaint is unnecessarily long and therefore grants
23   Metro's motion to dismiss without prejudice. The Court's prior order granting in part Metro's
24   judgment on the pleadings was intended to be narrow. (#73). Plaintiff's TAC simply needed to
25   remove the parts the Court dismissed and then include a short and plain statement of the claim
26   showing that Plaintiff is entitled to relief under Devereaux. The extensive litigation has given
27   Metro fair notice of Plaintiff's claims and the grounds upon which those claims rest, and
28   supplementing the TAC with a general Devereaux claim was all that was required. (#84, at 7).

In <u>Brown</u>, the complaint that was found "needlessly long" was sixty-eight pages, containing 345 paragraphs. <u>Brown</u>, 2021 WL 2007386, at *1. Here, the complaint is sixty-seven pages long, containing 377 paragraphs. (#78, at 6 n.1). There were seven claims at issue in <u>Brown</u>, whereas here there are only four. <u>Brown</u>, 2021 WL 2007386, at * 3; #74. The claims in <u>Brown</u> were not complex, as they related "mostly to Plaintiff's allegedly unlawful arrest" and "certain facts and circumstances surrounding that arrest." And as the magistrate judge stated in <u>Brown</u>:

> [S]ome of the cited passages… contain information that is helpful to a well-plead complaint, but the passages also contain extraneous, minute details that do not need to be included in the complaint. The Court also does not mean to suggest that the cited passages are irrelevant to this case. The Court is simply stating that the complaint contains many details that are unnecessary to 'a short and plain statement of the claim.

<u>Id.</u> at 4. The Court finds <u>Brown</u> persuasive.

The Court finds, as in <u>Brown</u>, some parts of Plaintiff's complaint are helpful, and other parts contain "extraneous, minute details that do not need to be included in the complaint." <u>Brown</u>, 2021 WL 2007386, at *4. Some of the allegations in the complaint contain inflammatory adjectives, superlatives, and details unnecessary to the facts. For example, one paragraph states:

> Based on the extreme and egregious level of coerciveness and abusiveness in the OFFICERS' above-quoted documented interrogation with Sorrells, it may be reasonably inferred that the OFFICERS used similarly coercive and abusive tactics in obtaining any other purported witness identifications (or other evidence incriminating Plaintiff) that the OFFICERS alleged that they obtained.

(#74, at 12). Other parts are simply redundant. The TAC alleges that Plaintiff indicated her innocence to officers and references that point may times over. <u>See id.</u> at 29-30. The TAC also alleges over fifteen times that the Stopka bodyworn camera video (i.e., the video of the perpatrator's January 23, 2018, interaction with Officer Stopka) was not viewed by investigating officers in full or in part. <u>See id.</u> at 12, 15, 32, 34-35, 37-38, 50. It is mentioned at least ten times that Plaintiff has no gap in her front teeth, but the true murderer did. <u>See id.</u> at 7, 33, 35, 36, 37, 45, 46, 55, 57. It is stated five separate times that the officers used and relied on only one "selfie" photograph of the actual perpetrator as a witness identifier. <u>See id.</u> at 6, 10, 14, 21, 36. Four

times is it stated that Plaintiff has no children, and the true perpetrator does. See id. 29, 33, 37, 38. Plaintiff need not cite in her complaint every fact that she intends to rely on at trial.

The Court understands the seriousness of the claims against Metro, but the complaint is unnecessarily long, redundant, and filled with argumentative and unnecessary accusations. Plaintiff asserts only four causes of action, and a "short and plain statement" with enough sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" is all that is needed. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

III.   Amendment

Plaintiff asks the Court for the opportunity to seek leave to amend in the event of dismissal. (#84, at 8). In accordance with Local Rule 15.1, Plaintiff may file a motion to amend the complaint with the proposed amended complaint attached that satisfies the requirements of Iqbal and Twombly, complies with Rule 8(a)(2) and Local Rule 15.1 within 21 days of the entry of this order. The amended complaint must not exceed 25 pages total. Failure to comply with this order may result in sanctions that include attorney fees, striking of pleadings, referral to the state bar for disciplinary action, and dismissal with prejudice.

IV.   Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#78) is **GRANTED without prejudice.**

**IT IS FURTHER ORDERDED** that Plaintiff may file a motion for leave to file a fourth amended complaint within twenty-one days of the entry of this order.

DATED this 7th day of March, 2023.

_____
Kent J. Dawson
United States District Judge