UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KEYHERRA GREEN, | Case No. 2:20-cv-00769-KJD-DJA |
| Plaintiff, | **ORDER** |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | |
| Defendants. | |

Before the Court are three motions: Plaintiff's Motion for Partial Summary Judgment (#117), Defendant Las Vegas Metropolitan Police Department's ("LVMPD") Motion for Summary Judgment (#118), and Defendants Fred Merrick ("Merrick") and Lora Cody's ("Cody") Motion for Summary Judgment (#119). For the reasons stated below, the Court denies Plaintiff's motion and grants Defendants' motions in part while denying them in part.

I.  Factual and Procedural Background[1]

On January 23, 2018, Masha Aliaskari requested a welfare check of her father Ghasem Aliaskari at his home at 3001 Cabana Drive #47, Las Vegas, Nevada 89122. (#117-20, at 2). Later that day, Police Officer Daniel Stopka ("Stopka"), while wearing a body camera, conducted a welfare check at Aliaskari's residence and encountered Keara Jean Green, the true killer. (#117, at 7-8). Stopka documented the interaction by taking notes in his communications log, which were later memorialized in Computer Aided Dispatch ("CAD") records, including her address (156 W. Ash St., Nolanville, Texas, 765559) and date of birth (08/22/1988). Id. at 8.

---

[1] As an initial matter, the Court notes that the facts of this case are convoluted and challenging to follow. In addition, the Court finds that Plaintiff's factual recitation in both her Fourth Amended Complaint ("FAC") and Motion for Partial Summary Judgment does little to alleviate this confusion. (See #111; #117). Therefore, the Court will utilize Plaintiff's pending motion and Declaration of Warrant/Summons ("Arrest Affidavit"), attached as an exhibit to the pending motion, as foundation for the factual background. While the Court recognizes that Plaintiff's pending motion alleges that the Arrest Affidavit contains deliberate fabrications, the Court finds that a reiteration of facts directly from the Arrest Affidavit will help streamline the Court's analysis and create a clearer picture of the overall legal dispute.

On March 3, 2018, Masha Aliaskari filed a missing person report for her father. (#117-20, at 2). Masha advised the police that she had called her father's cellphone and a black female answered, stating that she had the wrong number. Id. Subsequently, Masha's brother, Aria, texted his father's number and received a response that led him to believe that someone was in possession of his father's phone. Id. After a brief text message exchange, Aria received a self-picture of a black female, approximately 25 years of age, sitting on a bathtub. Id. Aria alleged to have recognized the bathtub as the one in his father's house. Id.

On March 8, 2018, a private investigator, hired by Aliaskari's family, arrived at Aliaskari's home and detected a foul odor coming from inside the residence. (#117, at 8). Subsequently, LVMPD was notified, police officers arrived, and made entry into the residence, discovering Aliaskari's body. Id. Detectives Merrick and Cody were assigned to investigate Aliaskari's murder. Id. On March 9, 2018, during the initial investigation, Dianna Sorrells ("Sorrells") arrived at Aliaskari's residence and informed the police that she was a resident. Id. at 12. Sorrells explained that she rents one of the rooms in the residence and that a black female, known as "Keyharra," was staying in a room with Aliaskari. (#117-20, at 3). Detective Cody showed Sorrells the text message picture of the black female, whom Sorrells identified as "Kiara." (#117, at 12). Subsequently, in an effort to locate the true killer, a LVMPD officer ran a "SCOPE" database check on the name "Keara Green." Id. at 10. The search came back negative, meaning that the person searched for had never been arrested in Nevada. Id. The LVMPD officer then broadened the search beyond the name "Keara Green" using a first name that was not "Keara" but shared common letters. Id. The results of this search turned up a black female, Keyherra Green, who had two prior Nevada bookings. Id.

As part of the investigation, on March 10, 2018, Detectives Merrick and Cody located Aliaskari's truck, which was in the possession of Donald Earley. Id. at 12. Detective Cody interviewed Donald Earley, who informed him that when he purchased Aliaskari's vehicle from Mathew Sweeney ("Sweeney"), a black female was accompanying Sweeney. Id. Subsequently, Detective Cody showed Donald Earley a picture of "Green," who affirmed "Green" was the black female with Sweeney at the time of the sale. (#117-20, at 5). On that same day, Detectives

Merrick and Cody interviewed Sweeney at Clark County Detention Center, who relayed the information that Sweeney met "Keyherra Green" at Molasky park around the second week of January. Id. Later that day, Detectives searched Aliaskari's residence and found a suitcase with paperwork that indicated it was "Greene's" suitcase. Id.

On March 14, 2018, a warrant was issued for the arrest of Keyherra Green. (#117, at 17). Shortly thereafter, on March 27, 2018, Plaintiff was arrested in California for the murder of Aliaskari. Id. On June 7, 2018, seventy-two days after she had been arrested, Plaintiff was released from custody. Id. Soon thereafter, on June 26, 2018, the true killer was arrested, and on August 7, 2018, confessed to killing Aliaskari. Id. at 18. The District Attorney dismissed the case against Plaintiff on August 9, 2018. Id. at 17.

Plaintiff now argues she is entitled to partial summary judgment on her § 1983 substantive due process and municipal liability claims, with the determination of damages reserved for trial. Id. In addition, Plaintiff further argues that Defendants Merrick and Cody are not entitled to qualified immunity on either claim. Id. at 27, 30. Defendants LVMPD, Merrick, and Cody argue they are entitled to summary judgment on all of Plaintiff's claims; and Defendants Merrick and Cody separately argue that they are entitled to qualified immunity on Plaintiff's substantive due process claim. (See #118; #119).

II.   Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere

allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "Where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th Cir. 2016)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

III.   Analysis

Plaintiff's Lawsuit is brought pursuant to 42 U.S.C. § 1983 which reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

This statute "provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes." Shafer v. City of Boulder, 896 F. Supp. 2d 915, 927 (2012); see Graham v. Connor, 490 U.S. 386, 393-94 (1989). A plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." West v. Atkins, 487 U.S. 42, 48-49 (1988). Here, Plaintiff relies on substantive rights conferred by the Fourteenth Amendment.

**A. Evidentiary Objections**

As an initial matter, the Court finds it important to address the evidentiary objections raised in Plaintiff's Consolidated Opposition to Defendants' Two Motions for Summary Judgment (#126) and Reply in Support of Motion for Partial Summary Judgment (#132). Spanning across

all three summary judgment motions, two responses, and three replies, the total documentation includes over 200 pages of briefings and over 1400 pages of exhibits. While some evidentiary objections may have merit, the sheer volume of documentation alone renders the process of properly analyzing the objections an exercise in futility. Moreover, Plaintiff has primarily raised the evidentiary objections outside the sections in which they are meant to support, further adding to the confusion faced by the Court. (See #126, at 18-23; #132, at 6). Plaintiff asks this Court to sift through 1400 pages of exhibits, address evidentiary objections, and then determine, across 200 pages of legal analysis, whether those objections are relevant to the underlying legal question. Given the substantial effort required for the Court to engage in this process, the Court's analysis is grounded in the factual information within the record, independent of any objections. Thus, all evidentiary objections are preserved for trial.

**B.  Fourteenth Amendment Due Process Violation**

Plaintiff argues that her two-month incarceration was a direct result of Merrick and Cody's submission of an arrest warrant affidavit that was "rife with deliberate false statements and improper omissions." (#117, at 6) Plaintiff asserts that these deliberate fabrications constitute a Fourteenth Amendment due process violation. See id. at 20. Defendants Merrick and Cody argue that Plaintiff's claim fails because they did not fabricate any evidence and separately move for summary judgment on this claim. (#125, at 6-13; #119) "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017). The Court will address each element in turn.

    i.  Deliberate Fabrication of Evidence

"[T]here is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government." Caldwell v. City & Cnty. of San Francisco, 889 F.3d 1105, 1112 (9th Cir. 2018) (quoting Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001)). Plaintiff can prove deliberate fabrication in two ways. See generally Richards v. Cnty. of San Bernardino, 39 F.4th 562, 569 (9th Cir. 2022). Plaintiff can produce direct evidence of deliberate fabrication or

circumstantial evidence related to Defendant's motive. Id. Here, Plaintiff argues that direct evidence of deliberate fabrication exists, based on the assertion that Merrick and Cody withheld crucial information and knowingly made false statements in the Arrest Affidavit. (#117, at 20-21). In response, Merrick and Cody argue that any mistakes and inaccuracies in the Arrest Affidavit stemmed from their belief that Plaintiff and the actual perpetrator were the same person, rather than from deliberate fabrications. (See #125, at 5-13). Direct evidence of deliberate fabrication can be demonstrated by the incorporation of witness statements into an investigative report that were misquoted or misrepresented. Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1111 (9th Cir. 2010). It can also be evident when a state official submits an affidavit containing statements they knew to be false or would have known were false had they not recklessly disregarded the truth. Keates v. Koile, 883 F.3d 1228, 1240 (9th Cir. 2018). Or it can be found when "the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985), amended, 769 F.2d 1410 (9th Cir. 1985).

Essentially, Plaintiff is arguing that Defendants Merrick and Cody knew that her and the true killer were different people, yet they deliberately fabricated evidence to frame her for the murder of Aliaskari. (See #117, at 20-23). To support this claim, Plaintiff points to five inaccuracies in the Arrest Affidavit as direct evidence of fabrication. See id. at 21. However, in addressing Plaintiff's motion, it is crucial to recognize that Merrick and Cody's argument—a case of mistaken identity—is both the foundation for their motion for summary judgment and the primary argument opposing Plaintiff's motion. (See #125; #119). By arguing that they reasonably believed the two individuals were the same person, the Court is confronted with two questions: (1) have Merrick and Cody raised a genuine issue of fact which can defeat Plaintiff's summary judgment argument, and if so, (2) did Plaintiff raise a genuine factual dispute regarding their argument of mistaken identity. While a case of mistaken identity may not always be a compelling argument, given the presented facts in this case, the Court is compelled to thoroughly assess this argument and the five allegedly false statements contained in the Arrest Affidavit.

First, Plaintiff argues that Defendants Merrick and Cody were aware that Plaintiff and the

1  actual perpetrator had different birthdates, despite Plaintiff's birthdate being stated in the Arrest
2  Affidavit. (#117, at 21). In response, Merrick and Cody argue that they did not fabricate
3  Plaintiff's birthday in the Arrest Affidavit because they "simply believed that [Keara] and
4  Plaintiff were the same person and therefore used Plaintiff's name and birthday in the
5  Declaration of Warrant." (#125, at 10). In reply, Plaintiff argues that "[a]t least as early as March
6  9, 2018, the Officers had the Stopka CAD Records stating the Perpetrator's birth date (Fact #12),
7  which provided actual knowledge of the facts that disproved the statement in the Arrest
8  Affidavit."[2] (#132, at 12). In this case, it is undisputed that Plaintiff and the actual perpetrator
9  share very similar birthdates. Plaintiff's birthday is August 17, 1988, while the actual killer's
10 birthday is August 22, 1988. (#117, at 21). While acknowledging the distinction between the
11 birthdates and considering the possibility that Defendant Merrick, the individual who drafted the
12 Arrest Affidavit, may have been aware of this difference, the Court finds it challenging to
13 conclude that, based on this factor and other similarities, Defendant Merrick deliberately
14 fabricated this date. As stated above, the correct legal standard is not whether Merrick and Cody
15 chose the wrong date, but rather whether they knew it to be false or recklessly disregarded its
16 truth when they made that choice. See Keates, 883 F.3d at 1240. Police officers are not perfect,
17 so if Merrick truly believed, as he claims, that Plaintiff and the true killer were the same person,
18 then this inaccuracy is not deliberate fabrication but mere carelessness on his part. See Spencer,
19 857 F.3d at 798 ("[N]ot all inaccuracies in an investigative report give rise to a constitutional
20 claim.").

---

[2] In replying to her motion for partial summary judgment, Plaintiff attempts to argue that, in addition to actual knowledge, constructive knowledge and the collective knowledge doctrine are sufficient to support a claim of deliberate fabrication. (See #132, at 9-10). The Court disagrees. First, a discussion of whether constructive knowledge or the collective knowledge doctrine is sufficient to satisfy a claim of deliberate fabrication never actually appears in the legal analysis section of Plaintiff's summary judgment motion. (See #117, at 20-23). Plaintiff only briefly raises it in her factual recitation section. See id. at 15-16. Second, when she raises it in her reply, it is asserted as a set of conclusory legal statements without further explanation. (See #132, 9-17). Plaintiff continuously reiterates the phrase "the Officers had constructive knowledge and had knowledge under the collective knowledge doctrine" without fully explaining what this knowledge is or how it establishes her claim of deliberate fabrication. Id. at 12-13. Therefore, as Plaintiff has failed to support these issues with any legal arguments, the Court deems them abandoned. See Kohler v. Inter-Tel Techs., 244 F.3d 1167, 1182 (9th Cir. 2001) ("Issues raised in a brief which are not supported by argument are deemed abandoned.").

Second, Plaintiff argues that Merrick and Cody knew that the paperwork found in Aliaskari's residence did not actually identify her but instead identified the actual perpetrator. (#117, at 21). Nonetheless, the Arrest Affidavit contained information attributing the paperwork to her. Id. In response, Merrick and Cody argue that because "both [Keara] and Plaintiff share the same last name" and because they "did not realize they had information for two individuals" they did not fabricate paperwork or information in the paperwork. (#125, at 10-11). In reply, Plaintiff argues that "[i]f [Defendants Merrick and Cody] had reviewed the documents, then they had actual knowledge that the Arrest Affidavit's assertions were false." (#132, at 13). Again, it is undisputed that Plaintiff and the actual perpetrator share very similar names. Plaintiff's name is Keyherra Danielle Green, whereas the actual killer's name is Keara Jeannine Green. (#117, at 21). Based on the fact that both individuals possess the same last name and same sounding first name, the Court again finds it challenging to conclude that Merrick and Cody deliberately chose to ignore any small differences, such as differences in first name spelling, between information found on the paperwork in the suitcase and Plaintiff's actual information when drafting the Arrest Affidavit.

Third, Plaintiff argues the Arrest Affidavit withheld the fact that Plaintiff's identity did not match the actual perpetrator's identity that was set forth in documents found at the crime scene. (#117, at 21-22). In response, Merrick and Cody argue that they did not withhold a comparison of Keara's information and Plaintiff's information from the arrest warrant "because [they] believed that the information identified one person, not two." (See #125, at 11). In reply, Plaintiff argues that the Arrest Affidavit omitted "numerous differences between Plaintiff's identifying information and that of the Perpetrator[.]" (#132, at 13). The distinctions Plaintiff relies on are differences in her first name, middle name, birthdate, height, and weight. (#117, at 21-22). While there are differences between Plaintiff's height and weight (5'4' and 130 pounds), compared to the actual killer's 5'7" and 195 pounds, she ignores two of the biggest similarities—both her and the true killer are black females. The Court emphasizes these similarities due to their immutability, in contrast to the alterable nature of a name, birthdate, and certain physical characteristics, which can be changed, falsified, or even fabricated. Again, because of the

multitude of similarities between both individuals, Merrick's failure to mention any differences in the Arrest Affidavit could easily be explained by his belief that both individuals were in fact the same person. Here, all Plaintiff has done is point out investigative errors, but she has failed to demonstrate that any of these errors were deliberately fabricated by either Merrick or Cody.

Fourth, Plaintiff argues that Merrick and Cody were aware that it would have been impossible for Sorrells to correctly identify the photo of the actual perpetrator as her since the photo itself depicted the genuine perpetrator. (#117, at 22). In response, Merrick and Cody argue that they "believed they were 'confirming' her identity based in part on the physical similarities between the two individuals." (#125, at 11). In reply, Plaintiff simply argues that it was false for the Arrest Affidavit to contain the statement "confirmed the text photo received by Aria was in fact Green." (#132, at 15). As previously stated, Plaintiff and the true killer share numerous physical similarities. The fact that Merrick and Cody believed the photograph confirmed the killer as Plaintiff, without more, is simply an investigative mistake, which Merrick and Cody admit. (#125, at 11).

Finally, Plaintiff argues that Merrick and Cody knew that Sweeney never actually identified, by name, the black female he had interacted with. (#117, at 22). In response, Merrick and Cody argue that is undisputed that Sweeney met Keara, and because they believed there was only one suspect, Plaintiff, they operated under the belief that Sweeney did in fact meet with Plaintiff. (#125, at 12). In reply, Plaintiff argues that Defendant Merrick's own transcript of an interview with Sweeney proves that he never stated he "met Keyherra Green[.]" (#132, at 16). The exact language in the Arrest Affidavit is "Sweeney Met Keyherra Green at Molasky park around the second week of January." (#117-20, at 5). As it is undisputed that Sweeney met with the true killer, Keara Green, at Molasky park, and considering Merrick and Cody's argument that they reasonably believed that Keara Green was Plaintiff, the Arrest Affidavit simply reflects this understanding.

The primary issue with Plaintiff's argument is that she continuously points to errors in the Arrest Affidavit and allege that they amount to direct evidence that Merrick and Cody made deliberate fabrications, but that is not the correct legal standard. Plaintiff must show that Merrick

and Cody "deliberately falsified statements" in the Arrest Affidavit. See Costanich, 627 F.3d at 1111. Moreover, while the Court does agree that the intentional or reckless omission of facts from the Arrest Affidavit can show deliberate fabrication, there is no precedent dictating that every difference in an investigation must be explicitly stated in an arrest affidavit. Here, Plaintiff had to demonstrate that Merrick "intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading," a burden she failed to meet. See Stanert, 762 F.2d at 781. At best, Plaintiff has only raised evidence of Merrick and Cody's ineffective and negligent investigation techniques, but these errors alone do not amount to deliberate fabrication. See Gausvik v. Perez, 345 F.3d 813, 817 (9th Cir. 2003) (holding that a careless or inaccurate affidavit did not amount to deliberate fabrication); Spencer, 857 F.3d at 798 ("[N]ot all inaccuracies in an investigative report give rise to a constitutional claim.").

Therefore, based on the numerous factual similarities between Keara Green, the true killer, and Plaintiff, the Court finds that Defendants Merrick and Cody have raised a genuine factual issue for trial, thereby defeating Plaintiff's Motion for Partial Summary Judgment. However, as Plaintiff fully disregarded Merrick and Cody's mistaken identity summary judgment argument, she has failed to set forth specific facts demonstrating a genuine issue for trial. See Matsushita Elec. Indus. Co., 475 U.S. at 587. Plaintiff has offered no evidence to dispute the fact that Merrick and Cody reasonably believed Keara and her were the same person, only evidence that they were different people. (See #126, at 24-25). In the context of this case, it is a small but crucial distinction. Had Plaintiff identified even a single piece of evidence demonstrating the fact that Merrick and Cody dismissed the possibility of there being two different individuals, the Court would have reached a different conclusion. See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000) ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."). Now with the benefit of hindsight, Plaintiff just points to mistakes in the Arrest Affidavit and asks this Court to infer Merrick and Cody's mental state. The Court will not do this. Thus, Plaintiff has failed to establish that summary judgment is warranted on this element, whereas Defendants Merrick and Cody have.

ii. Causation

"In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008) (citation omitted). However, as Plaintiff has failed to carry her burden on the first element of deliberate fabrication, it logically follows that Plaintiff has also failed to meet her burden as to the second element—causation. See Spencer 857 F.3d at 798. ("To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove…the deliberate fabrication caused the plaintiff's deprivation of liberty."). When asserting a § 1983 claim of deliberate fabrication, a deprivation of liberty necessitates an unconstitutional act; otherwise, all arrests would give rise to a substantive due process claim. As Plaintiff failed to establish an unconstitutional act by Merrick and Cody, her causation argument automatically fails as a matter of law.

**C. Municipal Liability**

Plaintiff's Motion for Partial Summary Judgment asserts that Merrick and Cody's deliberate fabrication was ratified by Defendant LVMPD, thereby establishing a municipal liability claim under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). (#117, at 29). Defendant LVMPD argues that Plaintiff's argument fails because she has not produced evidence any policymaker ratified Merrick and Cody's conduct and separately moves for summary judgment on this claim. (#125, at 20; #118, at 15-29). The Court agrees with Defendant LVMPD.

Under Monell, "[l]iability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002) (quoting Monell, 436 U.S. at 694). "To establish municipal liability under Monell, [Plaintiff] must prove that (1) [she] was derived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [her] constitutional right; and (4) the policy was the moving force behind the constitutional violation." Lockett v. Cnty. of Los Angeles, 977

F.3d 737, 741 (9th Cir. 2020).

Plaintiff can satisfy Monell's policy requirement in one of three ways. See Gordon v. Cnty. of Orange, 6 F.4th 961, 973 (9th Cir. 2021). "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992) (simplified). Here, the Court finds that Plaintiff's claim fails as a matter of law because she has failed to satisfy Monell's policy requirement.

Plaintiff asserts "it is undisputed that there was no discipline and no internal investigation here," and argues that under a Monell ratification claim, a municipality's custom can be inferred from failure to reprimand or discharge its officers in the incident at issue, citing Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001) in support of this assertion. (#117, at 29-30). However, to prove ratification, "a plaintiff must show that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). Moreover, "[t]he policymaker must have knowledge of the constitutional violation and actually approve of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004). Yet, Plaintiff's motion not only fails to argue the existence of an authorized policymaker and their approval of Merrick and Cody's conduct but it also incorrectly applies Gomez. (See #117, at 29-30).

In Gomez, the Ninth Circuit confronted a scenario where the top administrators (authorized policymakers) in a prison failed to investigate (1) prisoner retaliation complaints, (2) the lack of reprimand or discipline for the officers involved, and (3) the delegation of investigating such complaints to the officers involved in the complaints. 255 F.3d at 1127. Based on this, the Ninth

1  Circuit held that the prison's failure to investigate or correct constitutional violations supported a
2  finding that there was a policy or custom that led to the violation of the inmates' rights. Id.
3  Simply put, Gomez does not stand for the overly board assertion that ratification can be found
4  based solely on there being no discipline and internal investigation; there must be a conscious
5  decision by an authorized policymaker to turn a blind eye to the alleged conduct. As Plaintiff has
6  failed to identify any policymaker who essentially turned a blind eye to Merrick and Cody's
7  conduct, the Court finds Plaintiff's reliance on Gomez unpersuasive.

   Moreover, Plaintiff's assertion that Brizuela v. City of Sparks, No. 3:19-CV-00692-MMD-
   VPC, 2022 WL 3229389, at *37 (D. Nev. Aug. 10, 2022), as mentioned in her reply, supports
   the idea that a ratification claim is valid in absence of an internal investigation and officer
   discipline is also unfounded. (See #132, at 24). In Brizuela, the court found that failure to
   investigate, "even though such an investigation [was] mandatory under DM 9.1," contributed to
   the denial of defendants' motion for summary judgment regarding plaintiff's ratification theory
   of municipal liability. See 2022 WL 3229389, at *37-38. What the court did not hold is that
   absence of discipline and an internal investigation, by itself, is enough to impose municipal
   liability. Unlike in Brizuela, where an investigation was mandatory under Sparks Police
   Department General Order DM 9.1, Plaintiff has not presented any credible evidence that
   Merrick and Cody's actions required an investigation, or that failure to discipline or conduct an
   investigation was a violation of any specific policy. Id.; (See #132, at 22-24). While Plaintiff
   does claim "that there were numerous serious policy violations (Fact #64)," she fails to tie any of
   these alleged violations into her legal argument, and the Court will not do it for her. (See #117, at
   30).[3]

   The reality of police work is that sometimes the wrong person will be arrested, and while in
   some instances, that error leads to an investigation and discipline, in other cases, it does not. And
   because of this reality, without more, the Court finds it challenging to believe that a mistaken
   arrest should always result in an investigation and discipline, especially when faced with no

---

[3] In her response to Defendant LVMPD's motion for summary judgment, Plaintiff again alleges "numerous policy violations" but again fails to provide a comprehensive legal analysis detailing how these alleged policy violations substantiate her claim of municipal liability. (See #126, at 25-27).

caselaw or evidence to support this sweeping declaration. Accordingly, the Court grants summary judgment in Defendant LVMPD's favor against Plaintiff's Second Cause of Action—Municipal Liability for Unconstitutional Custom or Policy.

### D. Malicious Prosecution[4]

Defendants' Motion for Summary Judgment argues that Plaintiff's malicious prosecution claim fails as a matter of law because there was probable cause for her arrest, as clearly articulated in the Arrest Affidavit. (#119, at 6). In response, Plaintiff argues that the deliberate fabrication of evidence establishes the lack of probable cause, further arguing that there is, at the very least, a genuine issue of material fact concerning evidence of malice. (#126, at 29, 33).

In Nevada, "the elements of a malicious prosecution claim are: (1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceeding; and (4) damages." LaMantia v. Redisi, 38 P.3d 877, 879 (Nev. 2002) (quotations omitted); see Mills v. City of Covina, 921 F.3d 1161, 1169 (9th Cir. 2019) ("Federal courts rely on state common law for elements of malicious prosecution."). Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime. United States v. Ortiz-Hernandez, 427 F.3d 567, 573 (9th Cir. 2005); United States v. Buckner, 179 F.3d 834, 837 (9th Cir. 1999). Here, the Court finds that Plaintiff has raised a genuine dispute regarding whether probable cause existed to arrest her, making summary judgment inappropriate. See McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984) (holding that summary judgment is not appropriate if a reasonable jury could find that the officers did not have probable cause to arrest).

As argued by Defendants, "probable cause was quickly established during a mere five days of investigation." (#119, at 9-10). However, "[i]f probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in

---

[4] Defendant LVMPD's Motion for Summary Judgment incorporates by reference the arguments presented in Merrick and Cody's summary judgment motion regarding Plaintiff's claim of malicious prosecution. (#118, at 29). Therefore, this section constitutes an adjudication of the entirety of Defendants' summary judgment argument concerning malicious prosecution.

1  criminal activity." Ortiz-Hernandez, 427 F.3d at 574. As stated above and reiterated in
2  Defendants' motion and Plaintiff's response, there are numerous differences and similarities
3  between Plaintiff and the actual killer. This is undisputed. While these differences are not enough
4  to support a claim of deliberate fabrication, the Court finds that they leave open the possibility
5  that a reasonable jury could find that probable cause may have dissipated, and "[a] person may
6  not be arrested . . . if previously established probable cause has dissipated." See id. Despite
7  Defendants thoroughly explaining their basis for probable cause, the uniqueness of the facts
8  makes this a close call. When considering the totality of the circumstances, the Court finds that
9  there remains a genuine issue of fact as to whether a prudent person would have concluded that
10 there was a fair probability that Plaintiff had committed a crime. See id. As Defendants have
11 failed to persuade the Court that there was probable cause to arrest Plaintiff, there is no need for
12 the Court to address the remaining elements. Thus, Defendants are not entitled to summary
13 judgment on Plaintiff's Third Cause of Action—Malicious Prosecution.

### E. Qualified Immunity

15 In their motion for summary judgment, Defendants Merrick and Cody argue they are entitled
16 to qualified immunity on Plaintiff's claim of deliberate fabrication. (#119, 25-27). Defendants
17 further argue that even if a constitutional right was violated, Plaintiff will be unable to show that
18 they violated clearly established law. Id.  In response, Plaintiff argues that qualified immunity is
19 inapplicable. (#117, at 27-28; #126, at 25). "The principles of qualified immunity shield an
20 officer from personal liability when an officer reasonably believes that his or her conduct
21 complies with the law." Pearson v. Callahan, 555 U.S. 223, 244 (2009). In determining whether
22 officers are entitled to qualified immunity, the Court considers (1) whether the facts alleged
23 show the official's conduct violated a constitutional right; and (2) if so, whether the right was
24 clearly established as of the date of the involved events in light of the specific context of the
25 case. Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014) (quotations omitted).
26 Here, as the Court concluded that Defendants Merrick and Cody did not violate Plaintiff's
27 Fourteenth Amendment rights, they are entitled to qualified immunity as a matter of law.
28 Moreover, since the first element has been answered in the negative, the Court finds no need to

address the clearly established prong of the analysis. See <u>Williamson v. City of Nat'l City</u>, 23 F.4th 1146, 1151 (9th Cir. 2022) (concluding that there was no need to address the clearly established prong when it was found that a constitutional violation did not take place).

IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (#117) is **DENIED**.

Furthermore, **IT IS HEREBY ORDERED** that Defendant Las Vegas Metropolitan Police Department's Motion for Summary Judgment (#118) is **GRANTED** in part and **DENIED** in part. Summary judgment is **GRANTED** in Defendant LVMPD's favor against Plaintiff's Second Cause of Action—Municipal Liability for Unconstitutional Custom or Policy. Summary Judgment is **DENIED** as to Plaintiff's Third Cause of Action—Malicious Prosecution.

Furthermore, **IT IS HEREBY ORDERED** that Defendants Fred Merrick and Lora Cody's Motion for Summary Judgment (#119) is **GRANTED** in part and **DENIED** in part. Summary judgment is **GRANTED** in Defendants Fred Merrick and Lora Cody's favor against Plaintiff's First Cause of Action—42 U.S.C. § 1983 Devereaux Claim. Summary Judgment is **DENIED** as to Plaintiff's Third Cause of Action—Malicious Prosecution.

Lastly, the Clerk of the Court shall enter **JUDGMENT** in favor of Defendant Las Vegas Metropolitan Police Department on Plaintiff's Second Cause of Action—Municipal Liability for Unconstitutional Custom or Policy—and in favor of Defendants Fred Merrick and Lora Cody on Plaintiff's First Cause of Action—42 U.S.C. § 1983 Devereaux Claim.

Dated this 11th day of March 2024.

Kent J. Dawson
United States District Judge